BRADLEY, WARD and ADAMS, JJ., concurred.

Orders reversed and motion to amend granted.

---

ABIGAIL DE PUY, Respondent, *v.* JANE COOK, Appellant.

*Civil Damage Act — the test of injury — a son voluntarily supporting an aged mother — when a verdict is not excessive.*

The test whether, within the meaning of the Civil Damage Act, a mother is injured in her means of support by the death of her adult son, in consequence of intoxication, is not whether she possessed physical strength which, if exerted to its utmost limit, would have enabled her to earn a living in case she could find employment.

Where it appeared that a mother was sixty-three years of age, without property, and, up to the time of the death of her son, did nothing beyond taking care of the household, and who, since his death, had been almost entirely dependent upon the charity of friends, the conclusion is warranted that she had been deprived of her means of support by the death of her son.

Where an adult son voluntarily assumes the support of an aged parent, unable to maintain herself, she is as much entitled to the protection of the law as though her son had been compelled to support her under the Code of Criminal Procedure (§ 914).

The court will not, in determining whether a verdict rendered under the Civil Damage Act is excessive, be sedulous to inquire whether the verdict exceeds the probable cost of bare necessaries during the probable term of the plaintiff's life as computed from the annuity tables.

FIFTH DEPARTMENT, OCTOBER TERM, 1895. [Vol. 90.

A verdict for $1,325 for damages occasioned by the death of a son is not excessive in the case of a woman sixty-three years old who is unable to support herself to any considerable extent.

APPEAL by the defendant, Jane Cook, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Cayuga on the 3d day of October, 1894, upon the verdict of a jury rendered after a trial at the Cayuga Circuit, and also from an order entered in said clerk's office on the 20th day of March, 1895, denying the defendant's motion for a new trial made upon the minutes.

*Teller & Hunt,* for the appellant.

*F. D. Wright,* for the respondent.

LEWIS, J.:

The plaintiff's son, Albert De Puy, was drowned on the 20th day of April, 1889, in a raceway near Auburn while in a state of intoxication caused in part by intoxicating liquors sold to him by one George Miles, who was a tenant of a saloon rented to him by the defendant.

This action was brought by the plaintiff, under the Civil Damage Act of 1873, to recover damages for injury to her means of support occasioned by the death of her said son.

The deceased resided with his mother in the village of Owasco, a few miles distant from the city of Auburn. He drove into Auburn on the day he was drowned and went around among the saloons drinking liquor. He became intoxicated to such an extent that some of the saloon keepers refused to furnish him more liquor. He went into the saloon of Mr. Miles about eight o'clock in the evening and called for and drank a glass of ale, which was furnished him by Miles. He was at the time considerably under the influence of liquor.

After drinking the beer or ale he requested Miles to furnish him a bottle of whisky. Miles refused at first, but upon being assured by De Puy that he wished to use it the next morning for the purpose of straightening himself up, Miles furnished it and De Puy paid for it and left the saloon with the whisky.

Very soon thereafter he offered a drink from the bottle to a

Mr. Baker. Baker declined and De Puy then put the bottle to his lips and apparently drank from it. Shortly after he fell down, then got up and went to his wagon and started toward his home. As he was about to start he again invited Baker to drink. He was at the time very much intoxicated, so much so that Mr. Baker, after riding a short distance with him, became frightened at his manner of driving the horse and got out of the wagon and left the deceased to pursue his journey alone.

The evidence tends to show that De Puy, after Baker left him, left the direct road to his home and drove across a bridge and on to an embankment of the raceway of the Auburn Water Works Company. His dead body and that of the horse were found a few hours thereafter in the water of the raceway. The horse when found was attached to the wagon.

The sale of the beer and whisky to the deceased by Miles was proven by the undisputed evidence of two witnesses. That the deceased drank the beer and some of the whisky was quite clearly established, as was the fact that his intoxication at the time of his death was in part caused thereby.

He was, at the time of his death, thirty-three years old; was unmarried; he was an industrious, competent workman, and was in the receipt of a fair income from his daily labor.

He devoted his earnings to the support of his family, consisting of himself, his mother (the plaintiff) and an invalid sister. He had contracted to purchase the dwelling where he lived, and had paid part of the purchase price therefor, and was the owner of a small amount of personal property.

He was ordinarily sober, but would occasionally, when absent from home, get intoxicated. He had supported his mother from the time he was seventeen years old until his death. The plaintiff was a widow sixty-three years old, and was in rather poor health, although she was able to do and did do most of the family housework, and made and repaired a portion of the deceased's wearing apparel.

She had no property except some small articles of household furniture, and had no other means of support, except that furnished by her son.

The ground upon which the appellant's counsel mainly relies for

FIFTH DEPARTMENT, OCTOBER TERM, 1895.        [Vol. 90.

the reversal of the judgment is that the plaintiff failed to show that she had been injured by the death of her son in any means of support to which she was legally entitled.

Chapter 646 of the Laws of 1873, known as the Civil Damage Act, provides, so far as is material to this case, as follows:

"Every * * * parent * * . * who shall be injured in person or property or means of support * * * in consequence of the intoxication, habitual or otherwise, of any person, shall have a right of action in his or her name against any person or persons who shall, by selling or giving away intoxicating liquors, cause the intoxication in whole or in part of such person or persons, and any person or persons owning or renting or permitting the occupation of any building or premises, and having knowledge that intoxicating liquors are to be sold therein, shall be liable severally or jointly with the person or persons selling or giving intoxicating liquors aforesaid, for all damages sustained."

It is the contention of the defendant that the plaintiff was shown to be able to support herself by her labor, and that, therefore, her son was under no legal obligation to support her. The plaintiff testified that since her son's death, a period of four or five years, she had been employed nursing the sick, in all about three weeks. That she worked when she was able to and could find anything to do, but that she had not supported herself entirely, but that her church friends and other acquaintances had furnished her with supplies.

She had arrived at an age when most women, especially those not in robust health, who are without other means of support, are dependent upon others for their support.

The test is not whether the plaintiff possessed sufficient physical strength, if exerted to its utmost limit, to earn her living in case she should be so fortunate as to find employment.

Women of her age and condition of health are not likely to be able to find employment that is remunerative. Her case, we think, fairly came within the provisions of section 914 of the Criminal Code, which imposes upon a child of sufficient ability of a poor person who is old, impotent or decrepit, so as to be unable to work to maintain himself, the duty of maintaining such parent. This the deceased had voluntarily assumed to do, which answers the requirements of the law as effectually as if the assistance had been rendered

by compulsion. *Stevens* v. *Cheney* (36 Hun, 1) was an action brought under this Civil Damage Act. In discussing this question HAIGHT, J., states the rule to be as follows: " The law affords the same protection to those who perform their duty voluntarily as it does to those who reluctantly act under compulsion, and we are of the opinion that, if the parent is a poor person, ' within the provisions of the statute,' it was the duty of the son to aid in his support; and, if he voluntarily did that, and the plaintiff has been deprived of his means of support by reason of the intoxication, that then he may recover even though his child is over the age of twenty-one years."

The plaintiff was fairly shown to have been deprived of her means of support by the death of her son. (Black on Intoxicating Liquors, § 308.)

The verdict was for $1,325. The appellant's counsel contends that it was excessive. If we were to enter into a computation as to the probable cost of the bare necessaries for the support of the plaintiff during the probable term of her life, computed by the annuity tables, it might not amount to $1,325. The plaintiff was receiving a generous, comfortable support from her son. She testified that he was a good provider. Such support was of greater value to the plaintiff than would have been the bare necessaries of life. While she was able at the time of the death of her son to perform labor which would partially support her, her capacity for labor would naturally and in all probability lessen as she advanced in years.

The jury was fully and correctly instructed upon the legal questions involved in the action, and we find nothing in the appellant's exceptions calling for a new trial. The judgment and order should be affirmed.

BRADLEY, WARD and DAVY, JJ., concurred.

Judgment and order affirmed.