Joseph F. Gagliardi, J.
 

 This is an action brought by decedent’s father pursuant to section 11-101 of the General Obligations Law, commonly referred to as the Civil Damage or Dram Shop Act. The statute provides (General Obligations Law, § 11-101, subd. 1): “ Any person who shall be injured in person, property, means of support, or otherwise by any intoxicated person, or by reason of the intoxication of any person, whether resulting in his death or not, shall have a right of action against any person who shall, by unlawful selling * * * liquor [to] such intoxicated person, have caused or contributed to such intoxication ’ ’. The statute, as its predecessors, further provides for compensatory and punitive damages and authorizes a parent to maintain an action.
 

 The matter was tried without a jury and the testimony elicited is as follows. Plaintiff’s decedent, Thomas McNally, was 17 years and 7 months old on October 24, 1964, when he met his death in an automobile accident. Decedent was a senior in high school, was six feet two inches in height, weighed 225 pounds and earned approximately $40 a week as a part-time
 
 *206
 
 employee, of which sum $10 per week was contributed to his parents’ household expenses. Decedent resided at home and had a driver’s license which permitted him to operate a motor vehicle during evening hours. On October 23,1964, he borrowed the family automobile, with his parents’ consent, purportedly to attend a church social. Decedent picked, up a friend, one Douglas Lyman, and drove to the social, but left shortly thereafter to go to several bars. Lyman was 20 years old and on his last day of leave from military service. He testified that his intention for that evening was to celebrate his imminent departure. At 9:00 p.m. the young men arrived at their first destination, a bar, where ¡they remained for about 45 minutes. During this sojourn Lyman consumed three or four whiskeys and decedent had at least one beer. Thereafter, the young men attempted to gain access to a second bar in the immediate vicinity but were refused service because decedent failed to produce identification on request. Undaunted, the young men returned to the automobile and proceeded to defendants’ bar in Bedford Hills. Lyman testified that decedent appeared normal, sober, and operated the vehicle without incident. They arrived at defendants ’ bar at approximately 11:00 or 11:30 p.m. and Lyman personally observed decedent buy and consume one beer there. Lyman became intoxicated at defendants’ bar and could not recall how many beers decedent consumed although he speculated that approximately 10 beers were served decedent. Similarly, Lyman could not remember whether decedent drank bottled or tap beer but surmised that it was Schaefer bottled beer. Lyman believed that he and decedent remained on the premises for at least one hour.
 

 At 12:55 a.m. decedent and Lyman were involved in a motor vehicle accident when their car, which was being driven by the decedent, struck two parked vehicles on Church Street in Bed-ford Hills. Lyman could not recall having left defendants’ bar and has no recollection of the accident. Decedent was pronounced dead on arrival at the Northern Westchester Hospital. An autopsy performed on October 24, 1964, the day of the accident, at 11:30 a.m. found 0.28% “ ethanol ” in decedent’s blood.
 

 Defendants, the owners and operators of the bar, testified in substance that they asked the young men to leave the premises and did not serve them. However, searching cross-examination established various inconsistencies in their respective testimony. For example, defendant Trama testified that decedent exhibited a draft card but plaintiff stated that the contents of decedent’s wallet as returned from the hospital did not contain any such identification. Addis testified that he worked at
 
 *207
 
 a bar located on the second floor of defendants’ premises and. that no employee ever tended bar there. However, on the night in question he came downstairs, while decedent was on the premises, to obtain some ice. Addis was asked by Trama to inform decedent and Lyman that they should leave and Addis did as directed. During this period of seeking ice, the cash box upstairs was left unguarded and a busy bar remained unattended. Additionally, Trama stated that decedent and Lyman were on the premises for only 10 minutes but had previously conceded at an examination before trial that they might have remained for one-half hour.
 

 Under the foregoing circumstances the court finds the disinterested witness’ testimony of Douglas Lyman credible to the extent that a beer was sold by defendants to decedent and consumed by him.
 

 Prior to discussing the elements of proof in Dram Shop Act cases it is necessary to determine precisely what plaintiff’s contentions are. At the trial plaintiff’s counsel stated, as is alleged in the complaint, that part of the cause of action is predicated upon the unlawful sale of liquor to a minor. The court will discuss the various ramifications .the issue appears to raise. The point is relevant in two respects: to establish an
 
 11
 
 unlawful ” sale as required by statute and to bring such sales within the meaning of the Dram Shop Act whereby the burden of proof upon plaintiff to establish a sale .to an “ intoxicated person” is considerably lessened, if not entirely removed. The importance of the latter question shall be fully developed, as no reported case in this State has passed upon the proposition under the present version of the Dram Shop Act.
 

 Other serious questions have arisen concerning the application of the statute to the facts of this case. Consequently, the court will fully discuss the elements of proximate cause, unlawful sale, whether the Dram Shop Act covers sales of unidentified beers, and the legal damages recoverable, if any. Additionally, for the purpose of completeness the court will also discuss plaintiff’s potential common-law negligence cause of action.
 

 In 1873, New York enacted its first Dram Shop Act (L. 1873, ch. 646), entitled “ An act to suppress intemperance, pauperism and crime ”. The statute provided that designated persons, including a spouse, parent and child: “ injured in person, property, or means of support, by any intoxicated person, or in consequence of the intoxication * * * of any person, shall have a right of action * * * against any person who shall,
 
 *208
 
 by selling * * * intoxicating liquors, caused the intoxication, in whole or in part”. Nineteen years later the statute was amended to include a notice requirement, conditioning recovery upon proof that written notice had been given the vendor concerning sales to the intoxicated person (L. 1892, ch. 401, § 40;
 
 Quinlan
 
 v.
 
 Welch,
 
 141 N. Y. 158;
 
 Snyder
 
 v.
 
 Launt, 1
 
 App. Div. 142; see L. 1892, ch. 403, § 2). In 1896 the diverse legislation regarding liquor regulation was repealed and replaced by the Liquor Tax Law which carried forward a form of the original Dram Shop Act in combination with the liberal recovery provisions of the Laws of 1857 (L. 1896, ch. 112, § 39;
 
 Westbrook
 
 v.
 
 Miller,
 
 98 App. Div. 590; see L. 1857, ch. 628, §§ 20, 28). The Liquor Tax Law was thereafter transferred to the Consolidated Laws (L. 1909, ch. 39), but was largely nullified by the ratification of the Eighteenth Amendment to the Federal Constitution in 1919 and was repealed two years later (L. 1921, ch. 155,_§_.2)-r-"H'owever, the Legislature deemed it important to retain a Dram Shop Act and concomitant with its repeal of the Liquor Tax Law enacted section 16 of the Civil Rights Law (L. 1921, ch. 157), which apparently was taken
 
 in haec verba
 
 from a provision contained in the National Prohibition Act of 1919 (41 U. S. Stat. 305, United States Code, tit. 27, § 32, repealed 49 U. S. Stat. 872, ch. 740, tit. I, § 1, see
 
 Wilcox
 
 v.
 
 Conti,
 
 174 Misc. 230). In 1964, section 16 was transferred without change in language to the General Obligations Law (L. 1963, ch. 576).
 

 The gravamen of plaintiff’s claim is the right to recover damages under the Dram Shop or Civil Damage Act (General Obligations Law, § 11-101). The common law generally did not recognize a cause of action against the vendor of alcoholic beverages where his intoxicated patron caused an injury
 
 (Cole v. Rush,
 
 289 P. 2d 450 [Cal.]; Ann. 130 A. L. R. 352, Sale of Liquor or Drugs — Seller’s Liability). While there is a trend rejecting the common-law rule
 
 (Rappaport
 
 v.
 
 Nichols,
 
 156 A. 2d 6 [N. J.];
 
 Waynick v. Chicago’s Last Dept. Store,
 
 269 F. 2d 322 [7th Cir.], cert. den. 362 U. S. 903 [applying Mich. law];
 
 Pike
 
 v.
 
 George,
 
 434 S. W. 2d 626 [Ky.];
 
 Prevatt
 
 v.
 
 McClennan,
 
 201 So. 2d 780 [Fla.];
 
 Elder
 
 v.
 
 Fisher,
 
 217 N. E. 2d 847 [Ind.]), a majority of jurisdictions favor nonliability in the absence of a Dram Shop Act
 
 (Hamm v. Carson City Nuggett,
 
 450 P. 2d 358 [Nev.];
 
 Carr v. Turner,
 
 385 S. W. 2d 656 [Ark.]; see Ann. 75 ALR 2d 833, Intoxicants or Drugs — Injury). Whether New York may have been considered among the majority jurisdictions is debatable. Our Court of Appeals in sustaining the
 
 *209
 
 constitutionality of this State’s first Dram Shop Act observed that it creates “ a right of action and imposes a liability not known to the common law ”
 
 (Bertholf
 
 v.
 
 O’Reilly,
 
 74 N. Y. 509, 524), but in a companion case it noted that the unknown cause of action was the new type of damages permitted to be recovered by one injured in
 
 11
 
 means of support ”
 
 (Volans
 
 v.
 
 Owen,
 
 74 N. Y. 526;
 
 Quinlan
 
 v.
 
 Welch,
 
 141 N. Y. 158,
 
 supra).
 
 Furthermore, a recent New York case has permitted an action in common-law negligence to lie against the vendor for an off-premises accident
 
 (Berkeley
 
 v.
 
 Park,
 
 47 Misc 2d 381). Be that as it may, the Dram Shop Act effectively removes any doubts attributable to common-law negligence actions and attaches responsibility upon a vendor of intoxicating beverages though his act only remotely contributed to the occurrence
 
 (Bertholf
 
 v.
 
 O’Reilly, supra,
 
 p. 524). Violation of its provisions is negligence per se and the contributory negligence of the injured person is no defense
 
 (Mitchell
 
 v.
 
 The Shoals,
 
 19 N Y 2d 338; 45 Am. Jur. 2d, Intoxicating Liquors, § 588). Nevertheless, neither the consumer nor his estate has a cause of action under the statute
 
 (Bizzell
 
 v.
 
 N. E. F. S. Rest, Inc.,
 
 27 A D 2d 554;
 
 Scatorchia
 
 v.
 
 Caputo,
 
 263 App. Div. 304).
 

 The burden of proof rests with the plaintiff
 
 (Brown
 
 v.
 
 Iaconelli,
 
 26 Mise 2d 194; 48 C. J. S., Intoxicating Liquors, § 463) and he must establish that there was an unlawful sale of liquor to an intoxicated person which caused him injury. The key elements for recovery under the Dram Shop Act are (1) unlawful sale, (2) of liquor, (3) to an intoxicated person which (4) caused injury. The court shall discuss these elements seriatim but first must address itself to the issue of proximate cause.
 

 Some cases have held it essential to recovery that the intoxication be the proximate cause of the occurrence causing injury
 
 (Brown
 
 v.
 
 Iaconelli, supra;
 
 48 C. J. S., Intoxicating Liquors, § 442). To adopt the latter principle would virtually emasculate the Dram Shop Act and require the application of common-law rules, which clearly was not the intent of the Legislature. One authority has noted a difference in the application of proximate cause where the injury was caused by an intoxicated person as opposed to where injury is caused ‘£ by reason of the intoxication of any person ” (8 Syracuse L. Rev. 252, 256-257 [1957]; see
 
 McCarty
 
 v.
 
 Wells,
 
 51 Hun 171;
 
 Beers
 
 v.
 
 Walhizer,
 
 43 Hun 254). Nevertheless, the cases recognize that where a statute imposes liability for a violation thereof, proximate cause in the ordinary negligence sense is not required; merely
 
 *210
 

 “
 
 some practical or reasonable connection between the act it makes wrongful and the injuries sustained ” suffices
 
 (Daggett
 
 v.
 
 Keshner,
 
 284 App. Div. 733,738, mod. 6 AD 2d 503, affd. 7 N Y 2d 981). Accordingly, under the Dram Shop Act controlling precedent holds that a remote proximate cause between the ■sale and injury is sufficient to impose liability upon the vendor
 
 (Bertholf
 
 v.
 
 O’Reilly,
 
 74 N. Y. 509, 524,
 
 supra).
 
 To meet the burden of proof on causation, plaintiff must establish that the accident occurred while the consumer was intoxicated and that the sale contributed to the intoxication in the slightest degree
 
 (Hall
 
 v.
 
 Germain,
 
 131 N. Y. 536;
 
 Neu
 
 v.
 
 McKechnie,
 
 95 N. Y. 632;
 
 Bacon
 
 v.
 
 Jacobs,
 
 63 Hun 51;
 
 McCarty
 
 v.
 
 Wells, supra; Beers
 
 v.
 
 Walhizer, supra; Wilcox
 
 v.
 
 Conti,
 
 174 Misc. 230,
 
 supra).
 

 At bar, the autopsy, which was performed several hours after the accident, establishes decedent’s intoxicated state after the event. No proof other than decedent’s drinking was offered to explain the accident. In view of the fact that decedent’s automobile struck two stationary vehicles parked alongside the road, the compelling inference is that decedent was intoxicated at the time of the accident. Further inquiry, as to whether decedent’s intoxication was a proximate cause of the accident, is not required, although the evidence once again points toward that conclusion. However, the court’s finding that decedent was intoxicated at the time of the accident does not necessarily establish his intoxication at defendants’ bar
 
 (People
 
 v.
 
 Strauss,
 
 260 App. Div. 880).
 

 Before turning to the four elements essential to recovery, mention must be made concerning one other point. Under the Dram Shop Act, decedent’s purchases of intoxicating beverages from other establishments do not absolve defendants from full liability if their violation of the statute is established
 
 (Lawson
 
 v.
 
 Eggleston,
 
 28 App. Div. 52, affd. 164 N. Y. 600;
 
 Comstock
 
 v.
 
 Hopkins,
 
 61 Hun 189).
 

 As to whether plaintiff has established an unlawful sale, it is argued that defendants sold liquor to a minor or to an intoxicated person. Either sale is prohibited by statute (Alcoholic Beverage Control Law, § 65, subds. 1 and 2), and sales to minors are proscribed by the Penal Law (Penal Law, § 260.20, subd. 4; former Penal Law, § 484, subd. 3). At this juncture, it is sufficient to hold that defendants sold a beer to a minor which sale may be unlawful
 
 (Westbrook
 
 v.
 
 Miller,
 
 98 App. Div. 590,
 
 supra)
 
 despite decedent’s purported misrepresentation of age
 
 (Matter of Ross’s Dairies
 
 v.
 
 Rohan,
 
 10 A D 2d 987, mot. for lv. to app. den. 11 A D 2d 714; see Alcoholic Beverage Control Law,
 
 *211
 
 § 65-b). The sale to be unlawful must be of an
 
 “
 
 alcoholic beverage ” and, further, recovery is sanctioned only where the sale is of “ liquor ” (General Obligations Law, § 11-101, subd. 1). Consequently, the court must determine whether an unidentified beer is an alcoholic beverage under the regulatory legislation and, further, whether it is a liquor within the purview of the Dram Shop Act.
 

 “
 
 Alcoholic beverage ” as used in section 65 of the Alcoholic Beverage Control Law means
 
 “
 
 alcohol, ¡spirits, liquor, wine, beer, cider and every liquid * * * containing alcohol. * * * capable of being consumed by a human being ’ ’ (Alcoholic Beverage Control Law, § 3, -subd. 1). “Beer” is defined as “ any fermented beverages of any name or description” (Alcoholic Beverage Control Law, § 3, subd. 3). “ Liquor ” means “ all distilled or rectified spirits, brandy, whiskey, rum, gin, cordials or similar distilled alcoholic beverages ” (Alcoholic Beverage Control Law, § 3, subd. 19). Other legislation contains more precise definitions of liquor and beer. The National Prohibition Act defined “liquor” and “intoxicating liquor” as “alcohol, * * * beer
 
 * * *
 
 any spiritous * * * malt, or fermented liquor * * * containing one-half of one per centum or more of alcohol by volume ” (41 U. S. Stat. 305, ch. 85, tit. 2, § 1; U. S. Code, tit. 27, § 4; see
 
 Bolivar
 
 v.
 
 Monnat,
 
 232 App. Div. 33). The New York Tax Law defines beer as ‘ ‘ all alcoholic beer, lager beer, ale, porter, and stout, and all other fermented beverages of any name * * * containing one-half of one per centum, or more, of alcohol by volume ” (Tax Law, § 420, subd. 5).
 

 It should be noted that the initial version of the Alcoholic Beverage Control Law, which was enacted while the Eighteenth Amendment was in the process of repeal, originally only applied to the sale of beer and wine not exceeding 3.2% alcoholic content (L. 1933, ch. 180). Upon repeal of the “Prohibition” Laws the statute was amended so as to apply to liquors (L. 1933, ch. 819) and in 1934 the present version, as amended, came into being (L. 1934, ch. 478).
 

 At first blush, one would assume that any beer is an “ alcoholic beverage ” as that term is used in section 65 of the Alcoholic Beverage Control Law. However, the declared public policy of -this State as expressed in the -statute itself (Alcoholic Beverage Control Law, § 2) is to regulate the sale of all intoxicating beverages so as to promote temperance. The key to the regulatory scheme is that the statute applies only to beverages containing alcoholic content
 
 (Commissioners of Excise
 
 v.
 
 Tay
 
 
 *212
 

 lor,
 
 21 N. Y. 173); and it has been recognized that there are certain brews commonly called beers, containing no alcohol, which the .statute does not reach, such as sprucé beer, ginger beer, kumiss and similar beverages
 
 (People
 
 v.
 
 Schwartz,
 
 183 App. Div. 367, 369, affd. 224 N. Y. 647). Even during “ Prohibition ’ ’ certain beer substitutes, such as ‘
 
 ‘
 
 near ’ ’ beer, were not susceptible to Federal regulation. Compounding the problem herein is section 82 of the Alcoholic Beverage Control Law which applies solely to wines and is within the definition of
 
 “
 
 alcoholic beverage” (Alcoholic Beverage Control Law, § 3, ■subd. 1), and provides that section 65 shall be applicable to wines. No comparable provision is found in the article governing beer. Furthermore, a similar dichotomy exists in the statute concerning beer and liquor. For example, there are separate provisions for licenses (Alcoholic Beverage Control Law, § 81; cf.
 
 id.,
 
 § 64, subd. 4), regulating hours of sale (Alcoholic Beverage^ Control Law, § 105, subd. 14, pars, [a], [c]; § 105-a), and, until 1964, regulating off-premises advertising (Alcoholic Beverage Control Law, § 105, subd. 19; L. 1964, eh. 531, § 15 added
 
 “
 
 or liquor ”).
 

 An interpretation of the Alcoholic Beverage Control Law must be sought which is in accordance with legislative intent and the court must reconcile apparent contradictions and give effect, where possible, to every part of the enactment
 
 (Matter of Great Eastern Liq. Corp.
 
 v.
 
 State Liq. Auth.,
 
 30 A D 2d 307, 309, affd. 25 N Y 2d 525). Consequently, in determining whether the beer sold by defendants was an alcoholic beverage it would be useful to trace legislative and judicial developments concerning the issue of “ beer ” vis-a-vis
 
 “
 
 liquor ” within the meaning of the Dram Shop Act.
 

 Beer in the ordinary sense is not considered a liquor but is usually included within the word “ liquor ” in regulatory legislation unless the statute requires a different meaning (48 C. J. S., Intoxicating Liquors, § 8; Black’s Law Dictionary [4th ed.] 196 [Beer], 957 [Intoxicating Liquor]). Concededly, beer is a fermented liquor or maltous beverage
 
 (People
 
 v.
 
 Tretneck,
 
 175 Misc. 41; Agriculture and Markets Law, § 192-c; 48 C. J. S., Intoxicating Liquors, § 13), but as concerns its intoxicating character the cases have struggled valiantly with its elusive qualities. It is worth noting at this juncture that Federal law does not require a statement of alcoholic content on beer containers (U. S. Code, tit. 27, § 205, subd. [e], par. [2]) and New York State by appropriate regulation expressly prohibits it (9 NYCBR 84.6).
 

 
 *213
 
 In tracing the definition of liquor as used in the statutes one can readily see a change in viewpoint. Prior to 1896, New York legislation used the terms £
 
 ‘
 
 intoxicating liquors”,
 
 ‘1
 
 strong liquors” and ££ spiritous liquors” without further elaboration (see, e.g., L. 1892, ch. 401, § 32; L. 1873, ch. 646; L. 1857, ch. 628, §§ 12, 20, 28; L. 1855, ch. 231, § 22); and whenever the question was raised concerning whether a certain beer was intoxicating, the courts generally refused to determine the issue as a matter of law and submitted it to the jury
 
 (Rau
 
 v.
 
 People,
 
 63 N. Y. 277;
 
 Matter of Hunter,
 
 34 Misc. 389, affd. 59 App. Div. 626; cf.
 
 Commissioners of Excise
 
 v.
 
 Taylor,
 
 21 N. Y. 173,
 
 supra).
 
 However, in 1896 (L. 1896, ch. 112, § 2; L. 1909, ch. 39, § 2) the Legislature omitted the phrases “strong”,
 
 ‘1
 
 intoxicating ’ ’ and £ £ spiritous ’ ’ and it has been held that such omission evinced an intent to include within the regulatory scheme all alcoholic beverages so as to relieve the courts from determining as a fact whether or not the specific beverage sold was intoxicating
 
 (People
 
 v.
 
 Cox,
 
 106 App. Div. 299). In other words, if the beverage contained alcohol it was within the statute and if alcohol was absent, it was not subject to regulation. Thereafter, the courts commenced taking judicial notice that certain types of beers were of intoxicating quality and within the statute
 
 (People ex rel. Lanci
 
 v.
 
 O’Reilly,
 
 129 App. Div. 522, affd. 194 N. Y. 592;
 
 People
 
 v.
 
 Cashdollar,
 
 188 App. Div. 9). More recently, our 'Court of Appeals has held that certain mixed drinking concoctions, which have gained notoriety, present a jury question as to whether they are within the regulatory legislation, despite the absence of proof concerning alcoholic content
 
 (People
 
 v.
 
 Leonard,
 
 8 N Y 2d 60).
 

 Returning to the first portion of our original inquiry, it is clear that beginning in 1896 .through present times beers containing any amount of alcohol, however minute, are within the regulatory scheme. The sale of an alcoholic beer in violation of section 65 of the Alcoholic Beverage Control Law is unlawful. Whether the beer served to decedent contained alcohol has not been established by direct proof, but the court, as trier of the facts, must find in accordance with all the probabilities as are reflected in the record
 
 (People
 
 v.
 
 Leonard, supra; Markel
 
 v.
 
 Spencer,
 
 5 A D 2d 400, affd. 5 N Y 2d 958).
 

 Recent cases in this State involving section 65 of the Alcoholic Beverage Control Law and provisions of the Penal Law have implicitly held that unidentified beers are beverages containing alcohol despite the absence of affirmative proof in that regard
 
 (People
 
 v.
 
 Bergerson,
 
 17 N Y 2d 398;
 
 Matter of James G. Karas, Inc.
 
 v.
 
 Hostetter,
 
 29 A D 2d 947).
 

 
 *214
 
 Under the circumstances disclosed here it is most probable that the beer sold and consumed was the ordinary beer commonly found in bars, embodying alcoholic contents. Accordingly, the court finds that the beer sold was an ‘ ‘ alcoholic beverage ” and defendants violated section 65 of the statute in •selling to a minor.
 

 The question as to whether beer is a liquor within the meaning of the Dram Shop Act is more easily resolved. In
 
 Blatz
 
 v.
 
 Rohrbach
 
 (116 N. Y. 450) the Court of Appeals implicitly.held that alcoholic beer falls within the intendment of the act but, in construing the language of the 1873 statute, the court held that where the proof merely shows that the consumer drank •an unidentified beer, the brew will not be considered intoxicating (see Ann. 49 ALB 2d 764, 777-789, Judicial Notice — Intoxicating Quality). On the new trial the complaint was dismissed, partially on the ground that the beer was not of intoxicating quality
 
 (Blatz
 
 v.
 
 Rohrbach,
 
 60 Hun 169).
 

 Generally, the following rule serves as a guidepost in interpreting the Dram Shop Act: “ a statute of this character .should not be enlarged, it should be interpreted, where the language is clear and explicit, according to its true intent and meaning, having in mind the evil to be remedied and the object to be ■attained ”
 
 (Mead
 
 v.
 
 Stratton,
 
 87 N. Y. 493, 496).
 

 Accordingly, it is clear that the furnishing of alcoholic beer falls within the purview of the Dram Shop Act. As to the element of proof in this regard, it is open to question whether anything to the contrary in
 
 Blats
 
 accurately represents the law today. In light of the 1896 revision, the substantial changes in the Dram Shop Act of 1921, the enactment of the Alcoholic Beverage Control Law itself and judicial construction thereunder, plaintiff meets the burden of proof by establishing that the beverage sold, was of alcoholic nature, or, at the minimum, so identifies the drink that a court may take judicial notice of its intoxicating character (2 N. Y. Jur., Alcoholic Beverages, §§ 1, 122; 48 C. J. S., Intoxicating Liquors, § 473). As trier of the facts, I have previously determined that the beverage involved herein was of an alcoholic nature; and logic dictates that it be deemed a liquor within the meaning of the Dram Shop Act
 
 (People
 
 v.
 
 Leonard,
 
 8 N Y 2d 60,
 
 supra).
 

 Under the third essential element, plaintiff must establish that the unlawful sale was made to an intoxicated person. Actually this is too restrictively phrased as a principle of law, since subdivision 2 of section 65 of the Alcoholic Beverage Control Law has been read into the Dram Shop Act
 
 (Moyer
 
 v.
 
 Lo Jim Cafe,
 
 19 A D 2d 523, affd. 14 N Y 2d 792; 3 Warren’s
 
 *215
 
 Negligence, Intoxicated Persons, § 4.02) and recovery may be had where a sale is made to an intoxicated person, or to one “ actually or apparently, under the influence of liquor ” (Alcoholic Beverage Control Law, § 65, subd. 2). Of course, the seller’s act must still contribute to the intoxication
 
 (Hall
 
 v.
 
 Germain, 131
 
 N. Y. 536,
 
 supra).
 

 A generally accepted definition of legal intoxication is an impairment of capacity to think and act correctly, coupled with a loss, in part, of control of physical and mental facilities
 
 |(People
 
 v.
 
 Williams,
 
 28 Misc 2d 691; cf. Penal Law, § 240.40)
 
 [1]
 
 Nevertheless, the State has seen fit to differentiate between adults and minors under the age of 21 years in determining whether a motor vehicle was operated while under the influence of alcohol (Vehicle and Traffic Law, § 1192, subd. 4; see Vehicle and Traffic Law, § 1195, added by L. 1970, ch. 275, § 5, eff. Jan. 1, 1971).
 

 Clearly the results of the autopsy establish decedent’s intoxication at the time of death, but even this result would be of little probative value in a civil action against the decedent or his privies without affirmative proof establishing conformity with the procedure mandated by section 1194 of the Vehicle and Traffic Law
 
 (David
 
 v.
 
 Granger,
 
 35 A D 2d 636). The court has previously concluded that the decedent was intoxicated at the time of the unexplained accident (cf.
 
 Pfaffenbach
 
 v.
 
 White Plains Express Corp.,
 
 17 N Y 2d 132). However, it may not be inferred as a matter of law that the autopsy, performed approximately 10 hours after the accident, establishes decedent’s intoxication at defendants’ bar
 
 (People
 
 v.
 
 Strauss,
 
 260 App. Div. 880,
 
 supra).
 
 If the court is to credit plaintiff’s witness’ testimony entirely, it appears the decedent acted normally in defendants’ bar prior to being served and had driven there without incident. In sum, decedent appeared to be perfectly
 
 *216
 
 sober when he was served a beer on defendants’ premises. That •the beer may have contributed to decedent’s subsequent intoxication is besides the point, because liability is fastened upon the seller only where he sells to an intoxicated person, or to one actually or apparently under the influence of liquor.
 

 An argument may be made that decedent was “actually” under the influence of liquor prior to being served but did not show it and liability should follow. However, the record herein does not support the contention and, in any event, the law is otherwise.
 

 While the original Dram Shop Act did not contain any notice provision and would come into play even where sales were made to sober persons
 
 (Mead
 
 v.
 
 Stratton,
 
 87 N. Y. 493,
 
 supra; McCarty
 
 v.
 
 Wells,
 
 51 Hun 171,
 
 supra),
 
 the parallel civil recovery legislation embodied a notification requirement (L. 1857, ch. 628, § 20; cf.
 
 Hoard
 
 v.
 
 Peck,
 
 56 Barb. 202). Commencing in 1892, until repeal of the Liquor Tax Law, the Dram Shop Act itself contained an express notice provision (L. 1892, ch. 401, § 40; L. 1896, ch. 112, § 39; L. 1909, ch. 39, § 42). Accordingly, it is clear that the Legislature did not intend to impose absolute liability without some notice having first been accorded the vendor regarding the dangers attendant to the prohibited sale. The legislative history rings with notice and this is what is meant by the word “ actually”. The statute itself affords a vendor protection from liability for refusing to sell to a person “ actually” under the influence of liquor (Alcoholic Beverage Control Law, § 65). Consequently, the seller must have notice of a consumer’s near intoxicated condition, by means of objective outward appearances, for the sale to be unlawful and, hence, within the Dram Shop Act. All the proof in the record indicates that decedent was not intoxicated or under the influence of liquor at the time of the sale, and absent sufficient proof on this point signifying otherwise, the complaint must be dismissed.
 

 Nevertheless, plaintiff poses an alternative theory which would not require proof of decedent’s intoxicated state at the time of sale. Interpreting plaintiff’s allegations, it may be asserted that an unlawful sale to a minor must be read into the Dram Shop Act notwithstanding the condition of the consumer at the time of sale; liability following if the minor subsequently becomes intoxicated. The issue is not free from doubt and the question presented appears novel under the present version of the Dram Shop Act.
 

 Regulation of the liquor industry goes back to colonial times
 
 (People
 
 v.
 
 Cox,
 
 106 App. Div. 299,
 
 supra)
 
 and legislation prohibiting sales to minors was on the books prior to the compre
 
 *217
 
 hensive legislation of 1857 (see, e.g., L. 1855, ch. 231, §§ 1-3). Taking the latter year as our focal point the statute prohibited sales to minors under 18 years of age or to any minor where 'a parent had given notice to the seller (L. 1857, ch. 628, §§ 15, 20). Violation of these provisions rendered the seller
 
 11
 
 liable for all damages which may be sustained in consequence of such sale ” (L. 1857, ch. 628, § 28). It will be recalled that the Dram Shop Act came into being in 1873 and was so worded that a sale to
 
 any person who thereafter became intoxicated
 
 caused the statute to come into play.
 

 In other words, as section 28 of chapter 628 of the Laws of 1857 provided and incidentally was recognized as the genesis of the original Dram Shop Act
 
 (Bertholf
 
 v.
 
 O’Reilly,
 
 74 N. Y. 509, 518,
 
 supra),
 
 the Laws of 1873 attached liability to a vendor who sold liquor to a sober person who became intoxicated and caused injury
 
 (Mead
 
 v.
 
 Stratton,
 
 87 N. Y. 493,
 
 supra; McCarty
 
 v.
 
 Wells,
 
 51 Hun 171,
 
 supra).
 
 The various liquor provisions, including the Laws of 1857 were repealed in 1892 during a consolidation of the liquor laws (L. 1892, eh. 401, § 45). It was thereafter unlawful to sell to a minor under the age of 16 years and unlawful to sell to a minor more than 16 years old if his parent notified the seller (L. 1892, eh. 401, § 32, subds. 5 and 6, as amd. by L. 1893, ch. 480, § 9). A civil action for damages would lie for violation of the statute, apart from the remedy afforded by the Dram Shop Act which had not been repealed (L. 1892, ch. 401, § 40;
 
 Quinlan
 
 v.
 
 Welch,
 
 141 N. Y. 158,
 
 supra).
 
 In 1896 the Laws of 1892 and the Dram Shop Act were repealed and replaced by the Liquor Tax Law, which made it unlawful to sell to minors under the age of 18 years (L. 1896, ch. 112, §30). A civil damage recovery section apparently combined the former provisions of section 28 of chapter 628 of the Laws of 1857 and the Dram Shop Act (L. 1896, ch. 112, § 39). Recovery was permitted against the seller who caused the intoxication where plaintiff had given notice not to sell to the person who became intoxicated and suffered damages
 
 ‘‘
 
 by reason of the intoxication”
 
 (ibid.).
 
 These provisions were carried forward (L. 1909, ch. 39, §§ 29, 42) until repealed in 1921 (L. 1921, ch. 155, § 2). Thereafter, as we have seen, the Alcoholic Beverage Control Law made it unlawful to sell to minors under the age of 18 and the Civil Rights Law, now the General Obligations Law, contains the present version of the Dram Shop Act.
 

 The only Few York case touching upon the question presented herein is
 
 Westbrook
 
 v.
 
 Miller
 
 (98 App. Div. 590 [1904],
 
 supra).
 
 There a parent sued pursuant to section 39 of the Liquor Tax Law (L. 1896, ch. 112) alleging that defendant unlawfully sold
 
 *218
 
 liquor to her minor son. The damages claimed were loss of services due to the
 
 son’s
 
 absence from home while he was drinking. The court dismissed the complaint on the ground that the allegations as to damages were insufficient in law since the ■complaint did not ‘1 claim that the plaintiff has suffered damage by reason of the intoxication of her son” (p. 592). The court noted that section 30 of the statute proscribes sales to minors and other provisions impose civil and criminal penalties. However, the court concluded that since section 28 of chapter 628 of the Laws of 1857 and the Dram Shop Act of 1873 had been repealed
 
 “
 
 plaintiff’s action is not authorized by statute and it cannot be maintained by her unless she has sustained an injury recognized by the common law” (p. 593). No such injury being claimed, neither statutory nor common law permitted the cause of action. Implicit in the court’s ruling is that if legal damages had been sustained and pleaded, a right of action pursuant to section 39 would lie (see 34 L. R. A. 1036, Right of Action In Absence of Civil Damage Act; Ann. 130 A. L. R. 352, 368-369, Sale of Liquor or Drugs — Seller’s Liability; 25 Am. Jur. 2d, Intoxicating Liquors, § 555).
 

 It has been held that in the absence of a statute creating liability, the violation of a provision prohibiting sale of liquor to minors does not create a cause of action in favor of third persons
 
 (Fleckner
 
 v.
 
 Dionne,
 
 210 P. 2d 530 [Cal.]; 48 C. J. S., Intoxicating Liquors, § 441). This is merely a restatement of the general principle that violation of a statute designed to protect the public at large, as concededly section 65 of the Alcoholic Beverage Control Law is to be so classified, does not constitute negligence per se but must be the proximate cause of the accident to impose responsibility. On the other hand, in those jurisdictions that do not have a Dram Shop Act the trend has been to accord rights of action in common-law negligence to
 
 third persons
 
 injured by a minor, where there had been an unlawful sale of liquor
 
 to
 
 the minor
 
 (Rappaport
 
 v.
 
 Nichols,
 
 156 A. 2d 1 [N. J.];
 
 Elder
 
 v.
 
 Fisher,
 
 217 N. E. 2d 847 [Ind.];
 
 Prevatt
 
 v.
 
 McClennon,
 
 201 So. 2d 780 [Fla.];
 
 Pike
 
 v.
 
 George,
 
 434 S. W. 2d 626 [Ky.]; see Ann. 75 ALR 2d 833, Intoxicants on Drugs — Injury; 60 Col. L. Rev. 554 [I960]). Nevertheless, these cases recognize that violation of a statute prohibiting liquor sales to minors does not create a cause of action; rather, ■the action is predicated upon the usual negligence principles of proximate cause and foreseeability. Even in .this State it has been held that violation of section 65 of the Alcoholic Beverage Control Law does not create an independent cause of action and, while it must be read in conjunction with the Dram Shop
 
 *219
 
 Act, it should not be charged as evidence of negligence under the Dram Shop Act cause of action
 
 (Moyer
 
 v.
 
 Lo Jim Cafe,
 
 19 A D 2d 523, affd. 14 N Y 2d 792,
 
 supra;
 
 3 Warren’s Negligence, Intoxicated Persons, § 4.02).
 

 Research has failed to elicit any reported case concerning the rights of third persons, parent or otherwise, who claim a remedy under the Dram Shop Act for unlawful sales to minors. However, two cases in sister State jurisdictions remotely touch upon the point and analysis thereof may prove useful in aiding the court in arriving at a proper determination. At the time of the decision in
 
 Collier
 
 v.
 
 Stamatis
 
 (162 P. 2d 125), Arizona did not have a Dram Shop Act but the highest court in that State was called upon to determine whether a parent could recover for loss of services where his 15-year-old child suffered injury from the consumption of liquor which had been purchased in violation of statute. It was held that the statute was regulatory in nature and its violation did not give rise to civil liability; for otherwise a liquor vendor could be subjected to civil damages for sales in violation of other statutory provisions, such as sales during off hours and on election day.
 

 In
 
 Farmers Mut. Auto. Ins. Co.
 
 v.
 
 Gast
 
 (117 N. W. 2d 347 [Wis.]) a minor operating his family’s automobile was involved in a single-car accident. A passenger in the vehicle sued the operator’s father and his insurer; and the latter settled the claim. The insurer then sued a liquor vendor on the ground that he sold beer to the insured’s son in violation of a statute prohibiting sales to minors. The insurer relied upon the Wisconsin Dram Shop Act to bring the vendor’s sale within its purview. The court held that the Dram Shop Act was inapplicable on the ground that no notice had been given the vendor as required by the statute and that beer was not an
 
 “
 
 intoxicating liquor ’ ’ within the meaning of the Dram Shop Act. It is significant that the court did not hold that in no event can unlawful sales to minors be read into the Dram Shop Act. The court ■further held that as to common-law negligence the insurer stood in the shoes of the minor and could not recover.
 

 As in
 
 Westbrook
 
 (98 App. Div. 590,
 
 supra) Farmers Mutual
 
 may be read as supporting plaintiff’s contention that, upon proof establishing other essential elements of the statute, unlawful sales to minors are within the Dram Shop Act. However, in light of the history of our Dram Shop Act subsequent to
 
 Westbrook
 
 and the rationale espoused in
 
 Collier,
 
 this court is inclined to the view that a parent’s cause of action for damages for unlawful sales to his minor child does not lie under the Dram Shop Act. Nevertheless, an inflexible rule denying
 
 *220
 
 recovery in all instances where unlawful sales to minors occur should not be read into the statute. During the period of 1857-1892 section 28 of chapter 628 of the Laws of 1857 permitted recovery for any sale in violation of law and from 1873, when the Dram Shop Act came into being, through 1892, section 28 embodied a parallel remedy for unlawful sales to minors. The Dram Shop Act itself permitted recovery for any sale where the consumer became intoxicated. Repeal of section 28 in 1892 and the Dram Shop Act four years later necessarily leads to the conclusion that the Legislature meant to abrogate the rights statutorily conferred. But the
 
 Westbrooh
 
 court
 
 (supra),
 
 recognized that the language of the civil recovery provision of the Laws of 1896 might sustain a cause of action as is asserted here.
 

 Absent documentary legislative history indicating why the Legislature chose to change the language in the Dram Shop Act in 1921, the court can only surmise that it adopted the Federal version of the Dram Shop Act as contained in the National Prohibition Act. The short answer to plaintiff’s contention, therefore, is that the language of the present version of the Dram Shop Act just does not support his argument (see Practice Commentary to Dram Shop Act and cross reference to subdivision 2 of section 65 of the Alcoholic Beverage Control Law in McKinney’s Cons. Law of N. Y., Book 23A, General Obligations Law, p. 539). It may be argued with force that plaintiff is injured “by reason of the intoxication” of the minor (General Obligations Law, § 11-101, subd. 1), although even this language is a mere rephrasing of “in consequence of the intoxication ” (L. 1873, eh. 646) which itself has a recognized meaning not necessarily consonant with plaintiff’s contention (see 8 Syracuse L. Rev. 252, 256-257 [1957]).
 

 It may similarly be asserted that, unlike the original version of the Dram Shop Act, the sale to be actionable must be “ unlawful ” (see 48 C. J. S., Intoxicating Liquors, ■§§ 433-434; 8 Syracuse L„ Rev. 258,
 
 supra),
 
 and the use of the phrase “ unlawful selling ” in the statute must be given some meaning other than encompassing sales to intoxicated persons since such a sale is itself unlawful. Through the exercise of hindsight this appears to be legislative oversight today, since at .the time of the Dram Shop Act’s re-enactment in 1921, which added the quoted language, the prohibited sales provision in the Alcoholic Beverage Control Law was not yet on the books. However, simultaneously with the repeal of the former Dram Shop Act and its re-enactment, the repealing legislation added article 113 to the Penal Law and provided that an unlawful sale occurs
 
 *221
 
 upon a sale without a permit (L. 1921, ch. 155, § 1 [Penal Law, § 1212]). The latter legislation was repealed two years later (L. 1923, ch. 871) and until 1933 .sales of liquor in New York were governed by the provisions of the National Prohibition Act, which, in essence, was similar to the former provisions of article 113 of the Penal Law. Consequently, emphasis upon the phrase “ unlawful selling ” is of no aid to plaintiff but, in fact, when viewed in the light of its legislative history, appears to contravene his argument, because in 1921 the sole meaning to be ascribed to the quoted language was a sale without a permit.
 

 Nevertheless, as the statute in conjunction with the Alcoholic Beverage Control Law reads today, the quoted phrase appears superfluous and creates ambiguity in an otherwise seemingly clear expression of legislative intent. Absent the anachronous language, it is clear that the sale must be made to an
 
 “
 
 intoxicated person ’ which is consonant with the 1892 revision and subsequent re-enactments through 1921 requiring written notice before a seller could be held responsible. In the court’s opinion, notice is still required, albeit circumstantially, in the form that the sale must be made to an intoxicated person or to one under the influence of liquor. Additionally, it should be mentioned that it is not unlawful for a proprietor who sells alcoholic beverage to permit minors over the age of sixteen to remain on the premises (see Penal Law, § 260.20, subd. 1; formerly Penal Law, § 484,- subd. 1). Indeed, the harsh realities of economic life may dictate the necessity of expressly inviting such persons to the premises although not to consume alcoholic beverages. To cast the seller absolutely liable for unlawful sales to sober minors lawfully on the premises goes beyond the language of the statute and its obvious intent. To achieve this result the Legislature simply could have re-enacted the original Dram Shop Act. It chose not to do so and instead provided penalties for violation of the regulatory legislation and criminal penalties for unlawful sales to minors (Penal Law, § 260.20, subd. 4; formerly Penal Law, § 484, subd. 3). Furthermore, the court finds persuasive the rationale of the Arizona court in
 
 Collier
 
 v.
 
 Stamatis
 
 (162 P. 2d 125,
 
 supra),
 
 for an opposite conclusion here could cast a seller liable in damages for sales in violation of the Sunday, post-legal hours, election and other regulatory proscriptions (see Alcoholic Beverage Control Law, § 105, subd. 14; § 105-a), which was never the purpose of the original Dram Shop Act or its more liberal predecessor contained in the Laws of 1857.
 

 Nonetheless, within the factual context of this case the court declines to hold that in no case can an unlawful sale to a sober
 
 *222
 
 minor fall within the Dram Shop Act. Rather, the court only holds that a person standing in the shoes of a minor who was sober when served, such as a parent suing essentially for loss of services, does not have a cause of action under the Dram Shop Act (see
 
 Farmers Mut. Auto. Ins. Co.
 
 v.
 
 Gast,
 
 117 N. W. 2d 347 [Wis.],
 
 supra).
 
 That portions of the Alcoholic Beverage Control Law and the Dram Shop Act are
 
 in pari materia
 
 appears patent, but to hold in accordance with plaintiff’s supposition would do violence to statutory construction, lead to injustice and create noxious results, neither warranted .in law nor by the exigencies of the situation. In light of its legislative history and evident purpose, the Dram Shop Act is to be narrowly construed and not enlarged beyond the scope of the objects to be attained. To hold otherwise would be paying tribute to legislation as rewritten by the court, which is inconsistent with the substance of the statute and the function of the judiciary. Neither the letter nor the spirit of the statute would be served were the court to hold that a parent could recover for unlawful sales to his sober child and there should be no quandary on the facts here present. While there’ might be a question regarding the application of the Dram Shop Act as it concerns the remedy of an innocent third person (not in privity with the voluntarily intoxicated minor) vis-a-vis the vendor, that is not this case.
 
 [2]
 

 Accordingly, for the reasons hereinbefore stated, the statutory
 
 ‘1
 
 cause of action ’ ’ based upon unlawful sales to minors is dismissed. However, for the purpose of completeness the court shall address itself to the issue of damages and for that limited object assume that the other essential elements of the Dram Shop Act have been met.
 

 As to damages, plaintiff may only recover for injury to
 
 his
 
 
 *223
 
 person, property, means of support or otherwise (General Obligations Law, § 11-101, subd. 1;
 
 Bertholf
 
 v.
 
 O’Reilly,
 
 74 N. Y. 509, supra;
 
 Kilburn
 
 v.
 
 Coe,
 
 48 How. Pr. 144). The phrase “ or otherwise ’ ’, was added in 1921, and may permit recovery for mental distress (cf. Ann. 6 ALR 2d 798, Injury Within Civil Damage Act; 2 N. Y. Jur., Alcoholic Beverages, § 124) which is not an element in this case. Injury to person denotes a personal injury to the plaintiff such as an assault
 
 (Hammell
 
 v.
 
 Mannshardt,
 
 248 App. Div. 624;
 
 Bacon
 
 v.
 
 Jacobs,
 
 63 Hun 51,
 
 supra),
 
 which similarly is not an element herein. Plaintiff did suffer a property loss (see
 
 Kilburn
 
 v.
 
 Coe, supra),
 
 the expenses for repair or replacement of the damaged automobile, but no proof as to such expense was offered at trial. Accordingly, the remaining element of damages is “ means of support” which is not defined in the statute or in case law interpretation.
 

 It may be argued, not without force, that the funeral expense incurred by plaintiff is an injury to his property
 
 (Glaeseman
 
 v.
 
 New Brighton,
 
 130 N. W. 2d 43 [Minn.]), but in view of the determination of the Court of Appeals in
 
 Volans
 
 v.
 
 Owen
 
 (74 N. Y. 526,
 
 supra),
 
 it must be classified as damage in means of support (see 48 C. J. S., Intoxicating Liquors, § 482 [b]). In
 
 Volans
 
 plaintiff recovered a trial verdict for medical expenses and loss of services. The General Term affirmed (9 Hun 558) and characterized the medical expense recovery as property damage. The Court of Appeals reversed, holding that medical expenses fall within injury to means of support and the proof was insufficient to sustain a recovery in the latter category. This court perceives no legal distinction between medical and funeral expenses and classifies the latter as damages in means of support.
 

 It must be recognized that this is not an action for wrongful death, which was unknown at common law and is solely a creature of separate legislation
 
 (Travelers Ins. Co.
 
 v.
 
 Padula Co.,
 
 224 N. Y. 397, 402; EPTL 5-4.1
 
 et seq.).
 
 The action for damages under the Dram Shop Act is separate and distinct from the usual wrongful death action
 
 (Sharpley
 
 v.
 
 Brown,
 
 43 Hun 374;
 
 Dowling
 
 v.
 
 Stephan,
 
 206 Misc. 518; 21 Carmody-Wait 2d, New York Practice, Action for Wrongful Death, § 130:7; 3 Warren’s Negligence, Intoxicated Persons, § 4.05) and the term “ means of support ” is not synonomous with “ pecuniary injuries ” as used in the wrongful death statute (EPTL 5-4.3) (see
 
 Bundy
 
 v.
 
 Fridley,
 
 122 N. W. 2d 585 [Minn.];
 
 Howlett
 
 v.
 
 Doglio,
 
 83 N. E. 2d 708 [Ill.]; Ann. 4 ALR 3d 1332, 1377, Dramshop Act — Means of Support).
 

 
 *224
 
 A father may recover for loss in means of support where his child was in fact supporting him and without such recovery will not be able to support himself
 
 (De Puy
 
 v.
 
 Cook,
 
 90 Hun 43). However, the cases also note that a factor essential to recovery is whether the child was obligated by law to support his parent
 
 (De Puy
 
 v.
 
 Cook, supra; Stevens
 
 v.
 
 Cheney,
 
 36 Hun 1). This concept does not find support in other jurisdictions (see Ann. 4 ALB, 3d 1332, 1377-78,
 
 supra)
 
 and, in view of the fact that a parent is entitled to the wages of his unemancipated minor child (General Obligations Law, § 3-109;
 
 Stanley
 
 v.
 
 National Union Bank,
 
 115 N. Y. 122), and, further, that the former legislation in this State requiring a child to support his needy parent has been amended to exclude the coerced support (Domestic Relations Law, § 32, subd. 6, amd. by L. 1967, ch. 184, § 2; Family Ot. Act, § 415, amd. by L. 1966, ch. 256, § 46), it is the court’s opinion that the legal obligation element is not a prerequisite to recovery. Nonetheless, the statute has been restrictively applied to recoveries based on means of support, and the cases uniformly hold that for a parent to recover such damages predicated upon the los,s of services of a child, proof must be forthcoming establishing that the parent is not possessed of sufficient means to support himself without the aid of his injured child and that the expenses incurred by the parent have diminished his accumulated capital so as to reduce himself to a state of dependence
 
 (Volans
 
 v.
 
 Owen,
 
 74 N. Y. 526,
 
 supra; De Puy
 
 v.
 
 Cook, supra; Stevens
 
 v.
 
 Cheney, supra).
 
 Furthermore, where recovery is predicated upon loss in means of support, it has been held, contrary to .the rule in wrongful death actions, that evidence of the plaintiff’s remarriage is admissible to establish the extent of the damages suffered
 
 (Sharpley
 
 v.
 
 Brown,
 
 43 Hun 374,
 
 supra).
 
 Consequently, it is clear that the statute, as interpreted by the cited cases, reflects a legislative intent to transfer the burden of support from a governmental authority to the person responsible for the loss, but only where the one injured in means of support is economically unable to sustain the loss incurred. Here, the record is devoid .of any evidence concerning the financial position of the plaintiff or his spouse, and the court is unable to determine the economic effect of decedent’s death upon plaintiff’s financial status within the meaning of the Dram Shop Act. Accordingly, no compensatory damages may be awarded under the statutory cause of action.
 

 Similarly, assuming a prayer for exemplary damages may be deemed a part of the complaint, recovery therefor must be denied because plaintiff has not established a right to recover
 
 *225
 
 actual damages (14 N. Y. Jur., Damages, § 178), and, in any event, has failed to establish any “ aggravating circumstances ” entitling him to such relief
 
 (Reid
 
 v.
 
 Terwilliger,
 
 116 N. Y. 530, 535; see
 
 Neu
 
 v.
 
 McKechnie,
 
 95 N. Y. 632,
 
 supra;
 
 48 C. J. S., Intoxicating Liquors, § 483).
 

 Finally, it may be educed from the pleadings that plaintiff has a cause of action in negligence. Since neither the consumer of alcoholic beverages nor his estate, which is not a party herein, has a cause of action under the Dram Shop Act
 
 (Mitchell
 
 v.
 
 The Shoals,
 
 19 N Y 2d 338,
 
 supra; Bizzell
 
 v.
 
 N. E. F. S. Rest,
 
 27 A D 2d 554, supra;
 
 Scatorchia
 
 v.
 
 Caputo,
 
 263 App. Div. 304), only common-law negligence will lie. Actions in negligence lie despite claimed violations of the Dram Shop Act
 
 (Morrissey
 
 v.
 
 Sheedy,
 
 26 A D 2d 683;
 
 Hosdale
 
 v.
 
 Marrabell,
 
 285 App. Div. 1168;
 
 Berkeley
 
 v.
 
 Park,
 
 47 Misc 2d 381, supra;
 
 Tyrrell
 
 v.
 
 Quigley,
 
 186 Misc. 972), and, of course, may be asserted where the Dram Shop Act is not applicable
 
 (Moyer
 
 v.
 
 Lo Jim Cafe,
 
 14 N Y 2d 792, affg. 19 A D 2d 523,
 
 supra; Bizzell
 
 v.
 
 N. E. F. S. Rest, supra).
 
 Section 65 of the Alcoholic Beverage Control Law is not an absolute liability provision but its violation is some evidence of negligence in the common-law action
 
 (Morrissey
 
 v.
 
 Sheedy,
 
 supra;
 
 Berkeley
 
 v.
 
 Park, supra).
 

 In negligence, this a common-law action for the parent’s loss of services
 
 (Lawyer
 
 v.
 
 Fritcher,
 
 130 N. Y. 239;
 
 Bailey
 
 v.
 
 Roat,
 
 178 Misc. 870; see
 
 Garrison
 
 v.
 
 Sun Print. & Pub. Assn.,
 
 207 N. Y. 1;
 
 Morisi
 
 v.
 
 MVAIC,
 
 19 A D 2d 727; General Construction Law, § 37-a). However, the action is derivative and the parent may recover only if the infant could have recovered
 
 (Burke
 
 v.
 
 Broadway & 7th Ave. R. R. Co.,
 
 49 Barb. 529;
 
 Bailey
 
 v.
 
 Roat, supra;
 
 15 N. Y. Jur., Domestic Relations, §§ 415-416; 3 Warren’s Negligence, Children, § 4.07; Ann. 21 ALR 3d 469, Contributory Negligence — Imputing).
 

 If the decedent had obtained service from defendants through fraudulent means by way of offering false identification, decedent was guilty of an offense (Alcoholic Beverage Control Law, § 65-b), and the violation of the cited statute might be considered as some evidence of contributory negligence. Furthermore, an infant must exercise, the care which an ordinary prudent person of his age, capacity and experience would have exercised under similar circumstances (3 Warren’s Negligence, Children, § 3.01; 1 N Y PJI 2:48, p. 137). An infant may assume the risk of injury
 
 (Cadieux
 
 v.
 
 Board of Educ.,
 
 25 A D 2d 579) and, under the circumstances of this case, considering the decedent’s age of nearly 18 years, his intellectual capacity and experience, the court holds that he assumed the risks inher
 
 *226
 
 ent in voluntarily exposing himself to the dangers in the consumption of alcoholic beverages (see
 
 Vallentine
 
 v.
 
 Ayar,
 
 445 P. 2d 449 [Ariz.];
 
 Collier
 
 v.
 
 Stamatis,
 
 162 P. 2d 125 [Ariz.]). In any event, assuming as plaintiff contends, that decedent was intoxicated at the time of the accident and his intoxication contributed to the occurrence, decedent is guilty of contributory negligence as a matter of law and plaintiff, therefore, is precluded from recovery
 
 (Rodak
 
 v.
 
 Fury,
 
 31 A D 2d 816; see Vehicle and Traffic Law, § 1192, subd. 2). Accordingly, the common-law ‘ ‘ cause of action ’ ’ is dismissed.
 

 [1]
 

 . Whether a person is in a state of intoxication depends on many factors, to wit: whether the beverages were consumed on an empty stomach, the percentage of alcohol content in each beverage, the potential elimination of alcohol through the processes of oxidation and excretion, the physical characteristics of the consumer ; all of which tends to establish the rate of absorption of alcohol in the blood stream (Erwin, Defense of Drunk Driving Cases [2d ed.], 138-139, 266-281). Moreover, it is important to know when the drinking commenced, the quantity consumed and the time interval between the last drink and the accident. Furthermore, while the court takes judicial notice of facts well known within the brewery industry that domestic beers have an alcoholic content range of approximately 3.5% to 3.9% by weight per 12 ounce bottle and that foreign, beers have a somewhat higher alcoholic content, the plaintiff has failed to adduce proof along the lines I have referred to, other than putting into evidence the autopsy report.
 

 [2]
 

 . The court recognizes that its precise ruling in this regard may tend tq create an inconsistent application of the Dram Shop Act, when a proper case is presented, insofar as the unlawful sales to minors provision may be held to govern the rights of third persons, other than persons standing in the shoes of the minor. Additionally, while it may appear anomalous that a parent can recover damages against a vendor for sales to his intoxicated minor but not for sales to his sober minor, legislative history, statutory interpretation and judicial pronouncements support this result. Finally, it should be recalled that the Legislature in other areas has indicated that persons under the age of 21 are more susceptible to the influence of alcohol than are adults (Vehicle and Traffic Law, § 1192, subd. 4; see § 1195 added by L. 1970, eh. 275, § 5). While this line of demarcation appears rational, it is not unlawful to sell alcoholic beverages to minors over the age of 18 and a constitutional question concerning arbitrary classification may be in the offing were a parent of a minor below the legal drinking age permitted to recover against a vendor whereas recovery would be denied to parents of minors above said age.