**OHIO CASUALTY INSURANCE COMPANY, Plaintiff,**

v.

**Phil TODD, d/b/a Todd's Tavern and Rick A. Robertson, Defendants.**

No. 72490.

Supreme Court of Oklahoma.

June 11, 1991.

Jim T. Priest, Victor Albert, McKinney, Stringer & Webster, Oklahoma City, for plaintiff.

Reggie N. Whitten, Kent R. McGuire, Don R. Martin, Jr., Mills, Whitten, Mills, Mills, & Hinkle, Oklahoma City, for defendant Phil Todd d/b/a/ Todd's Tavern.

Mark Hendricksen, El Reno, Gary B. Homsey, Jerry F. Bryan, Gary B. Homsey & Associates, Oklahoma City, for defendant Rick A. Robertson.

### ORDER

Petition for rehearing filed in this cause is granted and this court's opinion promulgated herein on November 13, 1990 and

reported at 61 OBJ 3016 is withdrawn and replaced by the opinion filed this date.

OPALA, C.J., HODGES, V.C.J., and SIMMS, DOOLIN, HARGRAVE and SUMMERS, JJ., concur.

LAVENDER and KAUGER, JJ., concur in part, dissent in part.

ALMA WILSON, J., dissents.

SUMMERS, Justice:

The question certified for our resolution calls upon us to decide whether *Brigance v. Velvet Dove Restaurant, Inc.*, 725 P.2d 300 (Okla.1986), should be extended to create a common law cause of action against a tavern owner for an adult who voluntarily becomes intoxicated and is injured as a result of his own inability to drive a vehicle properly. We decline to extend *Brigance* to this situation, following the reasoning used by a majority of jurisdictions.

Pursuant to 20 O.S.1981, § 1601 et seq., the Uniform Certification of Questions of Law Act, the Honorable Fred Daugherty, District Judge for the United Stated District Court of the Western District of Oklahoma, certified the question to this Court as follows:

> Does an intoxicated driver have a cause of action under Oklahoma law against a tavern owner if the intoxicated driver, after being served alcohol by the tavern owner or employee who knew or should have known that the driver was intoxicated, is involved in an automobile accident in which only the intoxicated driver himself is injured?

## I. FACTS

On November 6, 1986, Rick Robertson was injured in a one-car accident after having been served alcohol in Todd's Tavern. Ohio Casualty Insurance Company instituted this action in federal court, asking for a declaratory judgment as to its duty to defend and indemnify Todd for any lawsuits resulting from this occurrence.

Robertson filed a cross-claim against Todd, alleging that the employees of Todd's Tavern served him alcoholic beverages when he was noticeably intoxicated in violation of 37 O.S.1981, § 537, and that for this reason Todd is liable for his injuries. Todd moved to dismiss the cross-claim under Federal Rule 12(b)(6) because Oklahoma has not recognized such a cause of action. Thus the question has been certified here.

## II. THE HOLDING OF *BRIGANCE v. VELVET DOVE RESTAURANT INC.*

■ All agree that the pertinent case is *Brigance v. Velvet Dove Restaurant Inc.*, 725 P.2d 300 (Okla.1986). Robertson urges that *Brigance* should be extended to cover the situation at bar. Todd, however, asserts that *Brigance* creates a cause of action for innocent third parties, and should not be stretched to include a situation wherein the inebriate sues for his own injuries.

In *Brigance* we recognized for the first time a common law "dram shop" action; a third party who was injured in an intoxicated driver's auto accident may now state a cause of action against the restaurant that served liquor to the driver. At common law, such an action was not possible. This rule of non-liability was based primarily on concept of proximate cause—that the consumption of the alcohol rather than its sale was the cause of the injury. In changing the common law rule and creating this cause of action, we acknowledged that legal duty and liability are matters of public policy and are therefore subject to the changing attitudes and needs of society. *Id.* at 303. We pointed out that protection must be afforded to the innocent bystander:

> With today's car of steel and speed it becomes a lethal weapon in the hands of a drunken imbiber. The frequency of accidents involving drunk drivers are commonplace. Its affliction of bodily injury to an *unsuspecting public* is also of common knowledge. *Id.* at 304. (Emphasis Added)

The creation of this cause of action, therein limited to third parties, served to protect the innocent by allowing liability to be placed not only on the intoxicated drivers but concurrently on those parties who con-

tinued to serve alcohol to their customers already noticeably intoxicated. *Id.* at 305.

Left open by *Brigance* was the question of whether the consumer-inebriate would have a cause of action against the vendor for on-premises consumption. Again, the question remained unanswered in *McClelland v. Post No., 1201, VFW,* 770 P.2d 569 (Okla.1989), wherein we determined that *Brigance* applied only to those events occurring after October 3, 1986. We are now called upon to address this question.

## III. NEGLIGENCE AND THE DUTY OF THE TAVERN OWNER

The elements of negligence are "(1) the existence of a duty on part of defendant to protect plaintiff from injury; (2) a violation of that duty; and (3) injury proximately resulting therefrom." *Brigance,* 725 P.2d at 302, *quoting Sloan v. Owen,* 579 P.2d 812, 814 (Okla.1977). All three of these elements must exist before the plaintiff has a valid cause of action. Robertson, relying on 37 O.S.Supp.1985 § 537(A)(2), urges that a duty exists on the part of a tavern keeper to refrain from serving alcoholic beverages to an adult customer who is noticeably intoxicated. Section 537(A)(2) states in relevant part that no person shall "[s]ell, deliver or knowingly furnish alcoholic beverages to an intoxicated person."

### A. NEGLIGENCE *PER SE*

■ Robertson urges that Todd violated Section 537(A)(2) and that the violation amounted to negligence *per se.* In *Hampton v. Hammons,* 743 P.2d 1053, 1056 (Okla.1987), we explained the elements which must be found before the violation of a statute is negligence *per se.* Relying on *Boyles v. Oklahoma Natural Gas Co.,* 619 P.2d 613, 618 (Okla.1980), we pointed out that (1) the injury must have been caused by the violation, (2) the injury must be of a type intended to be prevented by the ordi-

nance, and (3) the injured party must be one of the class intended to be protected by the statute.

■ Because we find the third element to be missing, we do not address the first two. In *Brigance,* we stated that the purpose behind Section 537(A)(2) was *to protect innocent third parties* who were injured by intoxicated persons. In *Cuevas v. Royal D'Iberville Hotel,* 498 So.2d 346, 348 (Miss.1986), the Mississippi Supreme Court construed a statute similar to Section 537(A)(2), and found that the intoxicated person was excluded from the class of persons meant to be protected by the statute. In making this determination, the court pointed out the class to be protected was the general public, and that this class, while broad in range, could not be said to include "an adult individual ... who voluntarily consumes intoxicants and then, by reason of his inebriated condition, injures himself." *Id.* We agree.

We find nothing in Section 537(A)(2), or in any of the statutes regulating the sale of alcohol, which indicate that the legislature intended to protect the intoxicated adult who, by his own actions, causes injury to himself.[1] Instead, it appears that the legislature intended to protect the "unsuspecting public"—in effect all of the populace except the willing imbiber. *Brigance,* at 304. *See also Bertelmann v. Taas Assoc.,* 69 Haw. 95, 735 P.2d 930, 934 (1987). Thus, a violation of Section 537(A)(2) does not amount to negligence *per se* under the facts of this case.

### B. THE DUTY OF THE TAVERN OWNER

■ Next is the question of whether a tavern owner has a common law duty to an intoxicated adult customer who injures himself. Because we find that the duty of the tavern owner does not extend to an adult customer who voluntarily consumes

---

1. The dissenting opinion urges that the Oklahoma Constitution, Art. 28 § 5 shows an intent to provide a cause of action against the tavernowner. Art. 28 provides the constitutional underpinnings for the regulation of the alcoholic beverage industry in Oklahoma. Section 5 criminalizes its sale by licensees to minors, the insane, and the intoxicated. Nowhere therein do we perceive any design to alter the common law so as to provide a civil remedy in tort for the adult imbiber against his barkeeper.

intoxicants and is injured, we need not address the question of proximate cause.[2]

Traditionally, no duty to the inebriated customer could be enforced for want of a recognized causal link. *Great Central Ins. Co. v. Tobias,* 37 Ohio St.3d 127, 524 N.E.2d 168, 171 (1988). In *Brigance,* however, we recognized that the concept of duty is one of public policy and is "subject to the changing attitudes and needs of society." *Id.* at 303. Because accidents involving drunk drivers have become commonplace, we held:

> "[W]e find the commercial vendor for on the premises consumption is under a duty, imposed both by statute and common law principles, to exercise reasonable care in selling or furnishing liquor to persons who by previous intoxication may lack full capacity of self-control to operate a motor vehicle and who may subsequently injure a third party."

We must now decide whether public concerns and changing attitudes require this duty to be extended to the inebriated customer.

Several states have considered the question. *See* Annot., 98 A.L.R.3d 1230 (1980). A majority of them have refused to create a cause of action for an adult who voluntarily drinks to the point of intoxication and is thereby injured.[3] These jurisdictions have generally concluded that as a matter of public policy drunken persons who harm themselves are responsible for their condition, and should not prevail either under a common law or statutory basis. *Bertelmann,* 735 P.2d at 933; *see also Wright v. Moffitt,* 437 A.2d 554, 557 (Del.1981). Focusing on the "duty" concept, these courts hold the view that no duty should be imposed "upon the tavernkeeper, and protection should not be extended, because the adult voluntarily created the vulnerability that is the problem." *Trujillo v. Trujillo,* 104 N.M. 379, 721 P.2d 1310, 1313 (Ct.App. 1986).

> "To allow recovery in favor of one who has voluntarily procured a quantity of liquor for his or her own consumption with full knowledge of its possible or probable results 'would savor too much of allowing ... [the] person to benefit by his or her own wrongful act.' " [*Allen v. County of Westchester,* 109 A.D.2d 475, 492 N.Y.S.2d 772, 776 (N.Y.1985)] ...
> We cannot allow such a result. *Id.*

If this Court were to create a cause of action against the tavern owner, the inebriate could be rewarded for his own immoderation. Such was not the intent of *Brigance,* nor will we allow such a reward. Rather, we concur in the view enunciated in *Kindt v. Kauffman,* 57 Cal.App.3d 845, 129 Cal.Rptr. 603, 610 (1976):

> The inestimable gift of reason and self-control cries out for preservation in ev-

---

**2.** *Brigance* required us to reconsider the common law concepts of causation which had theretofore precluded recovery. We held that there was no distinction between "voluntary *consumption* of alcoholic beverages and the *sale* of beverages...." *Id.* at 305.

**3.** *Sheehy v. Big Flats Community Day, Inc.,* 73 N.Y.2d 629, 543 N.Y.S.2d 18, 541 N.E.2d 18 (1989); *Gregor v. Constitution State Ins.,* 534 So.2d 1340 (La.Ct.App.1988); *Coudriet v. Southland Corp.,* 198 Cal.App.3d 849, 244 Cal.Rptr. 69 (1988) (cause of action barred by willful and wanton conduct of intoxicated minor); *Great Central Ins. v. Tobias,* 37 Ohio St.3d 127, 524 N.E.2d 168 (1988); *Jackson v. PKM Corp.,* 430 Mich. 262, 422 N.W.2d 657 (1988); *Davis v. Stinson,* 508 N.E.2d 65 (Ind.Ct.App.1987); *Bertelmann v. Taas Assoc.,* 69 Haw. 95, 735 P.2d 930 (1987); *Martin v. Palazzolo Produce Co.,* 146 Ill.App.3d 1084, 100 Ill.Dec. 703, 497 N.E.2d 881 (1986); *Cuevas v. Royal D'Iberville Hotel,* 498 So.2d 346 (Miss.1986); *Trujillo v. Trujillo,* 104 N.M. 379, 721 P.2d 1310 (Ct.App.1986); *Langle*

*v. Kurkul,* 146 Vt. 513, 510 A.2d 1301 (1986); *Riverside Enter., Inc. v. Rahn,* 171 Ga.App. 674, 320 S.E.2d 595 (1984); *Sager v. McClenden,* 296 Or. 33, 672 P.2d 697 (1983); *Fisher v. O'Connor's, Inc.,* 53 Md.App. 338, 452 A.2d 1313 (1982); *Wright v. Moffitt,* 437 A.2d 554 (Del. 1981); *Webb v. Regua Ltd. Partnership,* 624 F.Supp. 471 (E.D.Va.1985) (applying Virginia law).

Only a small minority of jurisdictions have extended the liability of the seller of the intoxicants to allow a cause of action in favor of the intoxicated adult. *McDonald v. Marriott Corp.,* 388 Pa.Super. 121, 564 A.2d 1296 (1989); *Lyons v. Nasby,* 770 P.2d 1250 (Colo.1989); *Sommerness v. Quadna Resort Serv.,* 416 N.W.2d 178 (1987); *Boehn v. Kish,* 201 Conn. 385, 517 A.2d 624 (1986) (allows a cause of action only for reckless and wanton conduct by the tavern owner); *Jevning v. Skyline Bar,* 223 Mont. 422, 726 P.2d 326 (1986); *Klingerman v. SOL Corp.,* 505 A.2d 474 (Me.1986); *Christiansen v. Campbell,* 285 S.C. 164, 328 S.E.2d 351 (Ct.App.1985).

ery person, and the duty of its preservation devolves upon each member of the public. When the restraint of reason and the ability to care for one's self are perverted by a conscious, self-indulgent act of voluntary intoxication which temporarily casts off those powers, no societal or personal wrong, nor violation of public or social policy is accomplished or violated if the actor is alone held answerable for his injury.... Governmental paternalism protecting people from their own conscious folly fosters individual irresponsibility and is normally to be discouraged.... To go yet another step and allow monetary recovery to one who knowingly becomes intoxicated and thereby injures himself is in our view morally indefensible.

The opinion concurring in part and dissenting in part argues that the creation of a new cause of action would be consistent with *Brigance.* In so urging, it is claimed that no logical reason exists for distinguishing between the intoxicated passenger and the intoxicated driver. We disagree. The difference is obvious and dispositive. One individual got behind the steering wheel of an automobile and drove it in a drunken condition; the other one didn't. Societal considerations aimed at deterring drunken driving forbid the driver's recovery of damages; no such policy need preclude a non-driver's claim.

In no other situation called to our attention does the law so excuse one's failure to act responsibly. A defendant in a criminal trial, for example, is held accountable for his criminal behavior committed while in a state of voluntary intoxication. *Grayson v. State,* 687 P.2d 747 (Okla.Crim.App. 1984); 21 O.S.1981 § 153. A worker's injury resulting directly from the intoxication of the injured employee while on duty is not compensable under Workers' Compensation law. 22 O.S.1981 § 11.

Then there are the practical consequences of recognizing such suits. "Pause, if you will and contemplate the vast number of claims that may be urged by drunks, if they were entitled to every expense and injury that are natural concomitants of their intoxication." *Sager v. McClenden,* 296 Or. 33, 672 P.2d 697, 701

(1983). In a world where alcohol is readily available for consumption by adults the ultimate accountability should rest on the adult consumer, absent unusual circumstances or injury to an innocent third party. A court that creates, as in *Brigance,* a cause of action based on public policy has a burden to responsibly chart the boundaries beyond which the new cause of action does not serve the public, and should not be the law. By that standard we see no public policy that would demand extension of the traditional tort law.

Here, the question is simply whether the intoxicated adult must bear the responsibility for his own injury which occurred due to his voluntary consumption of an excessive amount of alcohol. In the absence of harm to a third party, the act of serving an alcoholic beverage to an intoxicated adult customer and allowing the customer to exit the establishment does not constitute a breach of duty which is actionable in common law negligence. The public policy of protecting the innocent from the intoxicated would not be furthered by such an extension of *Brigance.* This holding does not ignore the conduct of the tavern owner, as the opinion concurring in part and dissenting in part fears. If a third party is injured, the rule of *Brigance* provides a cause of action against the tavern owner as well as the driver. Furthermore, the tavern owner who disregards the condition of his customers does so at the risk of criminal prosecution as well as forfeiture of his liquor license.

Accordingly, under the facts as presented to us we find that the tavern owner has no liability to the intoxicated adult who voluntarily consumes alcoholic beverages to excess and sustains injuries as a result of his intoxication. The question certified to us by Judge Daugherty must be answered in the negative. CERTIFIED QUESTION ANSWERED.

OPALA, C.J., HODGES, V.C.J., and SIMMS, DOOLIN and HARGRAVE, JJ., concur.

LAVENDER and KAUGER, JJ., concur in part, dissent in part.

ALMA WILSON, J., dissents.

OPALA, Chief Justice, concurring.

The court announces today that its recent *Brigance*[1] teaching shall not be extended to benefit an adult buyer of liquor who injures himself while voluntarily intoxicated. While I join in the court's pronouncement, I am writing separately to explain my own rationale for refusing to recognize an actionable claim against the drink's supplier by a *sui juris* consumer who voluntarily and knowingly ingests alcohol. Because in my view the question before us is broader than that answered by the court's opinion,[2] my concurrence today is not to be understood as a vote to deny actionability to claims against liquor suppliers when sued by three classes of consumer with impaired will. These consumers are narrowly defined later in my writing.

I

BRIGANCE ABROGATES THE COMMON–LAW CAUSAL BARRIER AGAINST THIRD PARTIES' RECOVERY FROM THE TAVERNKEEPER

By the common law of England a tavern owner is not liable for furnishing alcoholic beverages to one who after becoming intoxicated injures either himself or another. Claims do not lie against liquor vendors because—according to the common law's notion of causality—it is the voluntary consumption of alcohol rather than its sale that constitutes the proximate cause of the injuries sought to be redressed.[3] *The causal barrier springs from the common law's recognition that human beings are endowed with free will.* The *cause* of intoxication-generated harm is *indivisible* and the *blame* neither *transferable* nor *apportionable.* One who *voluntarily and knowingly* overdrinks is viewed as the author of his *willed misdeeds and of the ensuing harm.* He/she is alone responsible for the consequences of the action.[4] The individual's *willed* ingestion breaks the chain of causation and insulates the tavern-keeper's sale from becoming the proximate cause of the ingestion-generated damage.

The teaching of *Brigance* removes the causal barrier for a third party injured by the intoxicated purchaser. *Brigance* makes a third party's claim actionable by rejecting the common law's notion that the buyer's voluntary ingestion poses an insuperable impediment to the causal nexus critical to imposition of liability against the drink's provider. In a later case, *McClelland v. Post No. 1201, VFW,*[5] we pronounced the pre-existing causal barrier applicable to *all* claims arising *before the effective date of Brigance, no matter what recovery theory may be invoked against the tavernkeeper.* Because *Brigance* appears to signal a sweeping rejection of the common-law causal barrier for all claims generated by the provision of liquor, a revisit of its historical antecedents and underpinnings seems appropriate to limit the outer sweep of that pronouncement.[6]

II

THE COMMON LAW'S CAUSAL BARRIER SHOULD BE REMOVED TO CREATE ACTIONABLE CLAIMS FOR ONLY THREE NARROWLY DEFINED CLASSES OF INTOXICATED CONSUMER

The question before us today is whether the common-law causal barrier of volun-

1. *Brigance v. Velvet Dove Restaurant, Inc.,* Okl., 725 P.2d 300 [1986].

2. The class of consumer described in the federal certified question ("intoxicated drivers") appears to be broader in scope than that addressed by today's pronouncement (adult consumers who voluntarily imbibe liquor). The term "intoxicated drivers" is sufficiently broad to encompass liquor consumers with impaired will.

3. *Brigance v. Velvet Dove Restaurant, Inc., supra* note 1 at 302; *McClelland v. Post No. 1201, VFW, infra* note 5 at 571–572.

4. White, *Grounds of Liability, An Introduction to the Philosophy of Law,* p. 61 [Clarendon Press, Oxford 1985]. For this textwriter's explanation *see infra* note 9.

5. Okl., 770 P.2d 569, 572 [1989].

6. My commitment to Justice Simms' separate opinion in *Brigance, supra* note 1, at 306 (Simms, J., concurring), limits, at least for the author and me, the outer sweep of the *Brigance* pronouncement by excluding from its purview claims by the inebriated consumer himself.

tary ingestion should remain standing for claims by an intoxicated purchaser against the on-the-premises seller.[7] The gravamen of the tavernkeeper's immunity from civil liability is the common law's recognition that the *imbiber's free will* in ingesting liquor breaks the chain of causation and becomes the *sole* cause of harm. While I join in the court's refusal today to disturb this principle to benefit the *uncoerced sui juris consumer*, I would extend *Brigance* to allow actionable claims for *only* three narrowly defined classes of intoxicated consumer—all comprised of persons *clearly unable to exercise free will:* (1) those *sui juris* claimants whose will was overborne by duress, coercion or other wilful or grossly reckless misconduct, (2) those who were induced into imbibing by false misrepresentations that the potion was nonalcoholic or harmless and (3) those under legal disability—minors and mentally disabled—i.e., persons whose will the law recognizes as impaired by definition. My approach would leave largely unaltered the traditional common-law norms of civil accountability.

### A. Sui Juris Persons Whose Will Cannot Be Freely Exercised

The common law distinguishes between one's exercise of a free will and one's acts from overborne will. A person is generally deemed to act with a free will and is considered responsible for harm which results

7. Courts are divided on this issue. Nonactionability of an intoxicated consumer's claim against the tavernkeeper has been rested on various grounds:

(a) Some courts have retained the common-law rule that the consumer's injuries are *caused by his own actions* rather than those of the alcoholic beverages provider. *Great Cent. Ins. Co. v. Tobias*, 37 Ohio St.3d 127, 524 N.E.2d 168, 171 [1988]; *Nolan v. Morelli*, 154 Conn. 432, 226 A.2d 383, 388 [1967]; *Yoscovitch v. Wasson*, 98 Nev. 250, 645 P.2d 975 [1982]; *Bertelmann v. Taas Associates*, 69 Haw. 95, 735 P.2d 930, 933 [1987]; *Allen v. County of Westchester*, 109 A.D.2d 475, 492 N.Y.S.2d 772, 773, 775–776 [A.D. 2 Dept.1985] (the court stated that allowing a consumer to recover for injuries resulting from his voluntary alcohol ingestion "*would be tantamount to creating a no-fault law for intoxicated persons*"; the court further opined that to "allow recovery in favor of one who has voluntarily procured a quantity of liquor for his or her own consumption with full knowledge of its possible or probable results 'would savor too much of *allowing [said] person to benefit by his or her own wrongful act'*") (emphasis added); see also *Gregor v. Constitution State Ins. Co.*, 534 So.2d 1340, 1344 [La.App.1988], where the court stated that "*man has a free will and is responsible for harm to himself as a result of voluntary intoxication*". (Emphasis added.) Some courts have retained the common-law rule in social host cases. *Shuman v. Mashburn*, 137 Ga.App. 231, 223 S.E.2d 268, 271 [1976]; *Sutter v. Hutchings*, 254 Ga. 194, 327 S.E.2d 716, 719, n. 7 [1985].

(b) Other courts have found that the intoxicated person assumes the risk, is contributorily negligent by law, or defeats his own cause of action through his wilful and wanton misconduct. *Thrasher v. Leggett*, 373 So.2d 494, 496–497 [La. 1979]; *Tome v. Berea Pewter Mug, Inc.*, 4 Ohio App.3d 98, 446 N.E.2d 848, 853 [1982]; *Kemock v. Mark II*, 62 Ohio App.2d 103, 404 N.E.2d 766, 773, 777 [1978] (the consumer's voluntary action of driving the car was viewed as negligent and not the actual consumption of the alcohol itself); *Sissle v. Stefenoni*, 88 Cal.App.3d 633, 152 Cal.Rptr. 56, 57 [1979]; *Bertelmann v. Taas Associates*, *supra* 735 P.2d at 934; *Cooper v. National Railroad Passenger Corporation, infra* note 16, 119 Cal.Rptr. at 544–545; *but see Davis v. Stinson*, 508 N.E.2d 65 [Ind.App.1987]; see also *Ewing v. Cloverleaf Bowl*, 20 Cal.3d 389, 143 Cal.Rptr. 13, 572 P.2d 1155 [1978] (a cause of action was allowed when the *bartender's conduct was found to be wilful and wanton and the decedent's merely negligent* ).

(c) Some courts have based nonliability on the rationale that the tavernkeeper owes the consumer no duty to protect him from the results of his own intoxication, or that public policy considerations preclude the judicial creation of a cause of action. *Trujillo v. Trujillo*, 104 N.M. 379, 721 P.2d 1310, 1313 [N.M.App.1986]; *Miller v. City of Portland*, 288 Or. 271, 604 P.2d 1261, 1265 [1980]; *Tobias, supra* 524 N.E.2d at 171; *Swartz v. Huffmaster Alarms Systems, Inc.*, 145 Mich.App. 431, 377 N.W.2d 393, 396 [1985].

(d) Several courts have declined to make a public policy determination, deferring on this issue to the legislature. *Wright v. Moffitt*, 437 A.2d 554, 555 [Del.Supr.1981]; *Tobias, supra* 524 N.E.2d at 172; *Holmes v. Circo*, 196 Neb. 496, 244 N.W.2d 65 [1976].

(e) In some jurisdictions the state's dram shop act is deemed to be the exclusive remedy. *Ruth v. Benvenutti*, 114 Ill.App.3d 404, 70 Ill.Dec. 335, 337, 449 N.E.2d 209, 211 [1983]; *Martin v. Palazzolo Produce Co. Inc.*, 146 Ill.App.3d 1084, 100 Ill.Dec. 703, 710, 497 N.E.2d 881, 882 [1986]; *Rosas v. Damore*, 171 Mich.App. 563, 430 N.W.2d 783, 784 [1988]; *Jackson v. PKM Corp.*, 430 Mich. 262, 422 N.W.2d 657 [1988].

from his (or her) voluntary intoxication.[8] This notion is founded on time-honored and widely-held Western tradition that people who voluntarily and knowingly drink excessive amounts of alcohol will their own destruction. On the other hand, the capacity for free action is effectively destroyed when one's free will (a) is overborne by the conduct of another which compels compliance with some demand by means of duress, coercion or threats [9] or (b) is impaired by false misrepresentations.

I would make the common law's causal barrier uninvocable by those tavernkeepers (or their agents) who either (a) have overborne the *sui juris* buyer's will by wilful, oppressive or grossly reckless conduct or (b) have impaired it by falsely misrepresenting that the potion was harmless or nonalcoholic. Those classes of person clearly are *dehors* the protection affordable by the rationale underlying the law's restrictions on actionable claims against liquor suppliers. Yesteryear's causal barrier assumes the *imbibers possess a natural capacity to exercise their free will.* If this prove untrue, the reason for the causal barrier's invocation no longer exists.[10]

## B. Minors and Mentally Disabled Persons

I would treat the claims of minors and mentally disabled persons as actionable *either* on the theory of tavernkeeper's wilful

**8.** See *Gregor v. Constitution State Ins. Co.,* supra note 7 at 1344; *Thrasher v. Leggett, supra* note 7.

**9.** "As regards the voluntary nature of acts done when [one is] drunk or drugged, the law commonly draws a distinction, similar to that which we saw both it and Aristotle did in pleas of duress, between cases when the agent [actor] is responsible for his condition and cases when he is not. Thus, *acts due to externally administered drugs or drink are allowed to be involuntary, while those due to the self-administered are not"* (footnotes omitted) (emphasis mine). White, *Grounds of Liability, An Introduction to the Philosophy of Law, supra* note 4 at 61.

The common-law doctrine of duress is divided into two classes—duress by imprisonment and *duress per minas.* The latter arises when a person is threatened with loss of life or limb, or with mayhem and false imprisonment. See *Wood v. Kansas City Home Telephone Co.,* 223 Mo. 537, 123 S.W. 6, 8 [1909]. Duress exists when one's unlawful act induces another to make a contract or perform some act under circumstances which deprived him of the exercise of his free will. Minds cannot meet if one's will is overborne. *Newsom v. Medis,* 205 Okl. 574, 239 P.2d 784 [1951]; *Sinclair Refining Co. v. Roberts,* 201 Okl. 358, 206 P.2d 193 [1949]; *Samuels Shoe Co. v. Frensley,* 151 Okl. 196, 3 P.2d 216 [1931]. The common-law definition of duress is codified in 15 O.S.1981 § 55.

In *Newsom v. Medis, supra* 239 P.2d at 786, we noted that the common-law rule of duress had been relaxed and that duress may consist of acts other than those proscribed by § 55 *supra.* Recently in *Centric Corp. v. Morrison–Knudsen Co.,* Okl., 731 P.2d 411, 415–416 [1986], the court addressed this common-law concept in the context of economic duress/business compulsion. We held the doctrine available for invalidating settlement agreements and made its application turn on "whether the wrongful act is *sufficiently* coercive to cause a reasonably prudent person faced with no reasonable alternative to succumb to the perpetrator's pressure." (Emphasis added.) A major element of Centric's duress analysis, based on an objective test (the reasonably prudent person standard), is that the wrongful act must have *deprived the coerced party of its free will,* leaving no adequate alternative available. The Restatement (Second) of Contracts § 175 comment c, uses a subjective standard which focuses on the party actually coerced. *See* Medina, Economic Duress as a Means of Avoiding Settlement Agreements in Oklahoma, 15 OCU L.Rev. 255 [1990].

Duress is also an important concept in criminal law. In Oklahoma "a person is entitled to the defense of duress if that person committed the [act(s) or omission(s)] which constitute the crime because of a reasonable belief that he/she was in imminent danger of death or great bodily harm from another." Oklahoma Uniform Jury Instruction Cr. 717 [1981]. This instruction is based on 21 O.S.1981 §§ 152(7), 155, 156. In *Tully v. State,* Okl.Cr., 730 P.2d 1206, 1210 [1986], the court held that while duress is not a defense to an intentional homicide, it is available as a defense to felony-murder. *See* also Note, Criminal law: Tully v. State of Oklahoma: Oklahoma Recognizes Duress as a Defense For Felony–Murder, 41 Okla.L.Rev. 515 (1988). Involuntary intoxication by duress of another is also deemed a complete defense to a criminal charge. *Jones v. State,* Okl.Cr., 648 P.2d 1251, 1258 [1982]; *see also* in this connection *City of Minneapolis v. Altimus,* 306 Minn. 462, 238 N.W.2d 851, 855–856 [1976].

**10.** *Cessante ratione legis, cessat et ipsa lex* (with the reason for the rule of law ceasing, the rule itself ceases to apply). *Cleve v. Craven Chemical Co.,* 18 F.2d 711, 714 [4th Cir.1927]; *Cook v. Citizens' Ins. Co. of Missouri,* 105 W.Va. 375, 143 S.E. 113, 115 [1928]; Black's Law Dictionary, p. 207 [5th Ed.1979].

misconduct or for negligence in furnishing liquor to persons who are known or should be recognized as being under legal disability.

A tavernkeeper's liability for serving alcoholic beverages to a legally disabled overimbibing consumer, who is then injured while intoxicated, may be viewed as comprised within that class of common-law tort which imposes responsibility for acts of furnishing a dangerous instrumentality to immature or mentally disabled persons.[11] The delictual accountability rests in these instances on a breached duty to exercise that degree of care which is generally owed to persons under legal disability in proportion to their incapacity for self-protection. Liquor, when consumed by a child or by a mentally impaired person, is known to pose great danger. A tavern owner's sale of alcoholic beverages to persons he knows or should know to be under legal disability creates a *well-perceived* risk to the buyer's safety. The latter is entitled to the degree of care proportionate to his (or her) inability to foresee and to avoid the perils of alcohol intoxication.

Removal of the causal barrier for claims by minors and by the mentally disabled is entirely consistent with the common law's traditional protection accorded persons with an impaired will.[12] Liquor consumers falling into this narrowly defined class must be treated differently from uncoerced *sui juris* drinkers.

III

UNDER BOTH THE *VOLENTI* AND THE *IN PARI DELICTO* DOCTRINES, A *SUI JURIS* PERSON WHO VOLUNTARILY EXPOSES HIMSELF TO DANGER BY CONSUMING ALCOHOLIC BEVERAGES ASSUMES THE RISK INHERENT IN THAT ACTIVITY

The risk assumption notion of the *volenti non fit injuria* doctrine applies to uncoerced *sui juris* consumers. Under the *volenti* doctrine, when one, knowing and comprehending the danger, *voluntarily* exposes himself to it, though not negligent in so doing, he (or she) is deemed to have assumed the risk and is precluded from recovery for the resulting injury.[13] The maxim is predicated upon one's knowledge

---

**11.** At common law one is negligent if he places a loaded firearm within the reach of young children or known mentally disabled adults. One in possession or control of a dangerous instrumentality readily accessible to children of tender age is required by law to exercise the highest degree of care to protect them from injury. *Hart v. Lewis,* 187 Okl. 394, 103 P.2d 65, 67 [1940]; see also *Wroth v. McKinney,* 373 P.2d 216, 219 [Kan.1962].

**12.** At common law a child under the age of seven or, in the absence of evidence establishing capacity, one between the ages of seven and fourteen years, may not be held "accountable," or is conclusively presumed to lack the "discretion" or "capacity" for negligence; all three terms quoted are interchangeable. *McClelland v. Post No. 1201, VFW, supra* note 5 at 572 n. 8; *City of Shawnee v. Cheek,* 41 Okl. 227, 137 P. 724, 732 [1913]; *Ramage Mining Co. v. Thomas,* 172 Okl. 24, 44 P.2d 19, 23 [1935]; *Keck v. Woodring,* 201 Okl. 665, 208 P.2d 1133, 1135 [1949]; *Collier v. Stamatis,* 63 Ariz. 285, 162 P.2d 125, 127–128 [1945].

**13.** *See Thomas v. Holliday,* Okl., 764 P.2d 165, 169 [1988]; *Guinn v. Church of Christ of Collins-* *ville,* Okl., 775 P.2d 766, 784, n. 69 [1989]. The *volenti* doctrine reflects the Roman law's notion of legal wrong or *injuria.* The principle embodied in the maxim is that a loss inflicted by one's voluntary act or submission is not actionable. Dig. 47, 10, 1, 5 (*Quia nulla injuria est, quae in volentem fiat*); see Burdick, *Principles of Roman Law,* pg. 504 [1938]. The *volenti* doctrine is expressed as a common-law rule both in *Cruden v. Fentham,* 2 Esp. 685, 170 Eng.Rep. 496 [1799] and *Priestley v. Fowler,* 3 M. & W. 1, 150 Eng.Reg. 1030, 1031–1033 [1837]. For Oklahoma cases applying the doctrine, *see Davis v. Whitsett,* Okl., 435 P.2d 592, 599 [1967]; *Briscoe v. Oklahoma Natural Gas Company,* Okl., 509 P.2d 126, 129 [1973]; *Centric Corp. v. Morrison–Knudsen, Co., supra* note 9 at 419; for other jurisdictions discussing the doctrine, *see Gray v. E.J. Longyear Company,* 78 N.M. 161, 429 P.2d 359, 362 [1967]; *Halepeska v. Callihan Interests, Inc.,* 371 S.W.2d 368, 379 [Tex.1963]; *Munson v. Bishop Clarkson Memorial Hospital,* 186 Neb. 778, 186 N.W.2d 492, 494 [1971]; *Walsh v. West Coast Coal Mines,* 31 Wash.2d 396, 197 P.2d 233, 238–239 [1948]; *Lyons v. Redding Construction Company,* 83 Wash.2d 86, 515 P.2d 821, 822–826 [1973].

and appreciation of the danger and one's voluntary subjection to its consequences.[14]

Applying the *volenti* doctrine, one must conclude that, based on voluntary assumption of the known and apparent risk from ingestion of alcoholic beverages, the claim of a *sui juris* person cannot be recognized as actionable.[15] A known risk of consumption is the possibility that the tavernkeeper or his agents will negligently fail to recognize a consumer's obviously intoxicated state. An imbiber who drinks intoxicants on the premises implicitly acknowledges the possibility that the tavern owner may negligently continue to serve him liquor even though he has become inebriated and

accident-prone while in that condition.[16] In contrast, a person laboring under a legal disability because of age, mental impairment, false misrepresentations or coerced will—who can neither appreciate nor willingly assume the risk involved—will not be taken to have exposed himself to the risk of harm that arises from the tavernkeeper's negligent conduct.[17]

Furthermore, when the tavernkeeper serves alcoholic beverages to an obviously intoxicated patron who voluntarily consumes the liquor and becomes drunk in a public place, both parties are in violation of criminal law.[18] As between parties *in pari delicto* (those in equal criminal fault), the

---

**14.** A subjective standard is applied in evaluating a plaintiff's knowledge, comprehension and appreciation of the risk. *Thomas v. Holliday, supra* note 13 at 169.

**15.** *See Tome v. Berea Pewter Mug, Inc., supra* note 7, 446 N.E.2d at 853; *McNally v. Addis,* 65 Misc.2d 204, 317 N.Y.S.2d 157, 180 [1970].

**16.** *See* discussion in *Cooper v. National Railroad Passenger Corporation,* 119 Cal.Rptr. 541, 544, 45 Cal.App.3d 389 [1975] (disapproved in *Ewing v. Cloverleaf, supra* note 7, *but see Sissle v. Stefenoni, supra* note 7, which notes that the *Ewing* rule was later abrogated by statute); see also *Wright v. Moffitt, supra* note 7 at 555, n. 3; *Franklin v. Salminen,* 222 A.2d 261, 262 [Del. 1966].

**17.** The blame for self-inflicted harm dealt by a competent adult cannot be apportioned either at common law or under our statutes. Knowing and voluntary ingestion of alcohol by a competent adult, uninduced by fraud of another, is a *willed act.* In *Conner v. Burdine,* 120 Okl. 20, 250 P. 109, 110 [1926], the court observes that "[d]runkenness is a wholly self-imposed disability...." *See* also White, *supra* note 4 at 61, where the author notes that "acts due to ... self-administered" alcoholic drinks are voluntary, citing *Pearson's Case,* 168 Eng.Rep. 1108, 2 Lew.Cr.Cas. 144, 145 (1835). *Pearson* formulated the rule that "[v]oluntary drunkenness is no excuse for crime." *Contributory negligence* of the plaintiff does not avail at common law as a defense to a *willed act. Conner v. Burdine, supra* 250 P. at 110. Nor does our statutory *comparative negligence* scheme, 23 O.S.1981 §§ 13, 14, apply to a scenario in which two persons suing one another have each committed willed harm-dealing acts—i.e., the tavernkeeper's sale to an intoxicated *sui juris* consumer and the adult *sui juris* consumer's self-inflicted intoxication.

Damages that were *wilfully inflicted* cannot be apportioned at common law for contribution

among multiple harm-dealing co-actors who bear joint and several liability for the same tortious event. *Merryweather v. Nixan,* 101 Eng.Rep. 1337 [K.B.1799]; *Knell v. Feltman,* 174 F.2d 662 [U.S.Ct.App.D.C.1949]; *Fidelity & Casualty Co. of New York v. Chapman,* 167 Or. 661, 120 P.2d 223, 225 [1941]. In *Chapman* the court states that *"[t]he most plausible reason for such rule is that no man can make his own misconduct the ground for action in his own favor...."* (Emphasis mine.)

**18.** The terms of 37 O.S.Supp.1989 § 537(A)(2) of the Oklahoma Alcoholic Beverage Control Act provide:

"A. No person shall: * * *
2. Sell, deliver or knowingly furnish alcoholic beverages to an intoxicated person...."
The penalty for violating the quoted section is prescribed by 37 O.S.Supp.1988 § 538(G), whose pertinent terms are:
"Any person who shall knowingly sell, furnish or give alcoholic beverage to an ... intoxicated person shall be guilty of a felony...."
The terms of 37 O.S.Supp.1986 § 8 provide in pertinent part:
"... if any person shall be drunk or intoxicated in any public or private road, or in any passenger coach, streetcar, or any public place or building, or at any public gathering, from drinking or consuming such intoxicating liquor, ... he shall be guilty of a misdemeanor ..."
The guilty seller is a criminal offender under our law. *See* §§ 537(A)(2), 538(G), *supra.* The imbiber, except for the qualifications described in Part II of this opinion, is also an offender if he is inebriated in a public place (§ 8, *supra*) or is driving while intoxicated or impaired (§§ 47 O.S.Supp. 1988, 11–902, 11–904, 761, *infra* notes 23 and 24). Even an injured employee cannot get workers' compensation for an on-the-job injury that results *from voluntary intoxication.* 85 O.S.Supp.1985, § 11.

law will aid neither, but will leave them in the condition in which they are found.[19]

Moreover, allowing the inebriated *sui juris* consumer to sue the tavernkeeper would create a paradox and asymmetry in the law and thus stultify the legal system. The guilty drunk could throw off the entire burden of his civil accountability from himself to another, or have his fault apportioned with that of the tavernkeeper for the very same occurrence for which he would alone stand criminally responsible.[20] Individual and indivisible criminal accountability would be transformed into a form of shared or apportioned civil responsibility for the same act or omission. In short, a criminally *punished public drunk could* pass on to the liquor supplier the damages occasioned by the drunk's own commission of a penal offense.[21]

*Lifting the causal barrier for claims by tipsy drinkers against their liquor suppliers is not likely to foster safer consumer habits nor exhort the public to moderation. Legal liability that can be shared with or shifted to another tends to diminish an individual's sense of personal responsibility for the consequences of his (or her) own conduct. That in turn poses danger to the public.*

**19.** See e.g. *Cooper v. National Railroad Passenger Corporation, supra* note 16; *Kindt v. Kauffman,* 129 Cal.Rptr. 603, 610, 57 Cal.App.3d 845, 855 [1976]. For Oklahoma case law applying the *in pari delicto* doctrine, see *Bowlan v. Lunsford,* 176 Okl. 115, 54 P.2d 666, 668 [1936]. There, the court afforded no relief to a woman who sought damages from a man who allegedly impregnated her and then induced her to submit to an illegal abortion operation. Both parties were deemed *in pari delicto,* equally at fault, in having the abortion performed. For a discussion of the *in pari delicto* doctrine in contract law, see *Neal v. Pennsylvania Life Insurance Company,* Okl., 480 P.2d 923, 925 [1970]; *Canning v. Bennett,* 206 Okl. 675, 245 P.2d 1149, 1155–1156 [1952].

One could find many instances in support of the common law's commitment to the free-will precept, not the least of which is the principle which generally bars one from profiting from his own wrong. *Amicable Society v. Bolland,* 4 Bligh [N.S.] 194, 5 Eng.Rep. 70 [1815]; *Cleaver v. Mutual Fund Life Association,* 1 Q.B. 147 [C.A.1892]; *see also State Mut. Life Assur. Co. of Amer. v. Hampton,* Okl., 696 P.2d 1027, 1034, 1035, n. 6 [1985] (Opala, J., concurring). The rule is believed to have its antecedents in ancient maxims of general English jurisprudence: No man shall take advantage of his own wrong and its Law–French and Latin counterparts—(1) *Nul prendra advantage de son tort demesne* (no one shall take advantage of his own wrong); (2) *Nullus commodum capere potest de injuria sua propria* (no one can obtain an advantage by his own wrong), *De Zotell v. Mutual Life Ins. Co. of New York,* 60 S.D. 532, 245 N.W. 58, 59 [1932]; (3) *Jus ex injuria non oritur* (a right does not rise out of a wrong); (4) *Nemo allegans suam turpitudinem est audiendus* (no one alleging his own turpitude is to be heard as a witness; this maxim applies to a party seeking to enforce a right founded on an illegal consideration), *Davis v. Brown,* 94 U.S. 423, 426, 24 L.Ed. 204, 206 [1877]; (5) *Nemo ex proprio dolo consequitur actionem* (no one by his own fraud or wrong acquires a right of action), *De Vall v. Strunk,* 96 S.W.2d 245, 247 [Tex.Civ.App.1936]; (6) *Ex dolo malo non oritur actio* (a right of action cannot arise out of fraud), *Martineau v. Gresser,* 182 N.E.2d 48, 57 [Ohio Com.Pl 1962] ); and (7) *In pari delicto potior est conditio defendentis* (in the case of equal fault, the defendant's position is stronger), *Kelly v. Courter,* 1 Okl. 277, 30 P. 372, 373 [1892]; *Norris v. York,* 105 Kan. 448, 185 P. 43, 44 [1919]; *Evans v. Cameron,* 121 Wis.2d 421, 360 N.W.2d 25, 28 [1985]; *McGhee's Adm'r v. Elcomb Coal Co.,* 288 Ky. 540, 156 S.W.2d 868, 869 [1941], *Martineau, supra* at 57).

**20.** Justice Black noted in *Powell v. State of Texas,* 392 U.S. 514, 538, 88 S.Ct. 2145, 2157, 20 L.Ed.2d 1254 [1968] (Black, J., concurring), that public drunkenness has been a crime throughout our history and today is made an offense in every state. In *Powell* the Court refused to hold that responsibility for the crime of public drunkenness by alcoholism could be shifted to a disease process. Reasoning that chronic alcoholics could properly be required to control their actions to the extent necessary to avoid collision with the criminal law, the Court held that chronic alcoholism is no defense to any crime—even the crime of public intoxication. Justice Marshall, writing in a plurality opinion, states:

"Traditional common-law concepts of personal accountability and essential considerations of federalism lead us to disagree with appellant. We are unable to conclude, on the state of this record or on the current state of medical knowledge, that chronic alcoholics in general ... suffer from such an irresistible compulsion to drink and to get drunk in public that they are utterly unable to control their performance of either or both of these acts and thus cannot be deterred at all from public intoxication." *Powell supra,* 392 U.S. at 535, 88 S.Ct. at 2155.

**21.** *This scenario would treat the public to a spectacle much akin to that which unfolds when a convicted burglar recovers damages from the crime's victim for harm received while unlawfully on the victim's premises.*

## IV

### TODAY'S OPINION REFUSES TO SUBJECT LIQUOR SUPPLIERS TO A NEW FORM OF *PASS-THROUGH CRIMINAL ACCOUNTABILITY* THAT WOULD MAKE THEM CIVILLY ANSWERABLE TO A DRUNK CONSUMER FOR LOSSES FROM THE LATTER'S VIOLATIONS OF THE STATE'S PENAL CODE WHILE IN A STATE OF VOLUNTARY INTOXICATION

Had the court invoked today our comparative negligence regime, 23 O.S.1981 §§ 13, 14, to announce tavernkeeper's new liability to the drinking consumer, it would have crafted a new form of *pass-through criminal responsibility* for liquor suppliers, which would make them civilly answerable to a drunk consumer for losses from the latter's violations of our Penal Code while in a state of intoxication (public drunk,[22] driving while intoxicated[23] or driving while impaired,[24] and any other offenses in which the *actor's drunkenness constitutes an element of the crime*). Under the cloak of developing tort liability—a subject traditionally within the ambit of our common law[25]—the court *would have created a new class of obligor who might be co-responsible with the drunk for the incidents of the latter's criminal penalties.* If a convicted drunk driver were to sue the tavernkeeper, the latter could now be called upon to respond in damages for *confinement-related economic and personal losses, criminal fines, court costs and counsel fees,* either *in toto* or *pro tanto,* based on the defendant's degree of negligence. The incidence of criminal liability is indeed affected by such an indirect deflection of the whole or a portion of one's penalty; it would create a rubric of shared or pass-through accountability for a class of public offense—a concept that contravenes 21 O.S.1981 § 2,[26] which invests *the Legislature alone* with the power to regulate the incidence of criminal responsibility.[27] This court cannot define offenders, either direct or remote, any more than it may create a public offense. The three classes of person whom I would allow to press claims against liquor suppliers are not subject to the Penal Code's prohibitions. These class members enjoy

**22.** 37 O.S.Supp.1986 § 8, *supra* note 18.

**23.** 47 O.S.Supp.1988 §§ 11–902, 11–904.

**24.** 47 O.S.Supp.1987 § 761.

**25.** The source of common law in Oklahoma is 12 O.S.1981 § 2, whose pertinent terms are:
"*The common law,* as modified by constitutional and statutory law, judicial decisions and the condition and wants of the people, *shall remain in force* in aid of the general statutes of Oklahoma...." (Emphasis added.)
The common law provides a dynamic component for our legal system. *Brigance, supra* note 1 at 303; *McCormack v. Oklahoma Pub. Co.,* Okl., 613 P.2d 737, 740 [1980]; *Ontiveros v. Borak,* 136 Ariz. 500, 667 P.2d 200, 204 [1983].
In *McCormack, supra* at 740, the court said: "The common law, followed in Oklahoma, refers not only to the ancient unwritten law of England, but also to that body of law created and preserved by decisions of courts. *The common law is not static, but is a dynamic and growing thing* and its rules arise from the application of reason to the changing conditions of society. Flexibility and capacity for growth and adaptation is its peculiar boast and excellence." (Emphasis added.)

In *Lewis v. Wolf,* 122 Ariz. 567, 596 P.2d 705, 706 [Ct.App.1979] (quoting from William O. Douglas, *Stare Decisis,* 49 Colum.L.Rev. 735, 736 [1982] ), the court noted the following text which captures the essence of the dynamic nature of the common law:
"Inherent in the common law is *a dynamic principle which allows it to grow and to tailor itself to meet changing needs* within the doctrine of *stare decisis,* which, if correctly understood, *was not static* and did not forever prevent the courts from reversing themselves or from applying principles of common law to new situations as the need arose. If this were not so, we must succumb to a rule that a judge should let others 'long dead and unaware of the problems of the age in which he lives, do his thinking for him.'" (Emphasis added.)

**26.** The pertinent terms of 21 O.S.1981 § 2 are: "No act or omission shall be deemed criminal or punishable except as prescribed or authorized by this code...."

**27.** *See Sharpe v. State ex rel. Oklahoma Bar Association,* Okl.Jud., 448 P.2d 301, 305 [1968] (there are no common-law crimes in Oklahoma); *Hunter v. State,* Okl.Cr., 375 P.2d 357, 358 (syllabus 4) [1962] (defining crimes is one of legislative power).

statutory immunity grounded on the law's recognition of their impaired will.[28]

Had the court announced the tavernkeeper's *new* broad liability to every drinking consumer, it would have established a subclass of pass-through offender upon whom the law casts, in whole or in part, the onus of a criminal penalty. I could not countenance this indirect encroachment into the exempted arena of criminal accountability.

## V

## A PRIVATE RIGHT OF ACTION CANNOT BE IMPLIED FROM ART. 28, § 5, OKL. CONST.[29]

I cannot accede to the dissent's view that Art. 28, § 5, Okl. Const., creates a private right of action for an inebriated consumer.

The U.S. Supreme Court in *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*[30] and its progeny[31] has recognized that a right of action for damages against a federal officer may exist by *constitutional implication,* though it has *imposed a precondition* upon the scope of the permissible constitutional implication. There must be an absence of an *equally effective statutory remedy* for the vindication of an expressed fundamental-law protection.[32] No implied private cause of ac-

tion can be said to have been created directly by Art. 28 in the face of vitalizing legislation that is amply effective.

Art. 27, Okl. Const. (Art. 28's predecessor), is *no more than* a yesteryear's promise to the people of Oklahoma that if they would vote to repeal prohibition they will receive the *protection of criminal process* through statutes prohibiting licensed liquor dealers from selling alcoholic beverages to minors and to intoxicated adults. This promise stands in fact fulfilled by the legislature's post-amendment enactment of the Oklahoma Alcoholic Beverage Control Act [Act],[33] which in its earlier form provided that any one who knowingly sells alcoholic beverages to minors and intoxicated persons shall be *guilty of a felony.*[34] When the Act came to be amended in 1985—*after* Art. 27 was repealed in 1984 and replaced by Art. 28 to allow county option for the sale of liquor by the drink—its criminal penalty provisions remained essentially undisturbed.[35] The statutory regime now in force provides an *effective criminal remedial scheme* for the fulfillment of public policy considerations that underlie the Oklahoma constitutional protections in question. *In short, the criminal-law regime in force effectively serves to vitalize*

**28.** The terms of 21 O.S.1981 § 152 provide in pertinent part:
"All persons are capable of committing crimes, except those belonging to the following classes:
1. *Children* under the age of seven (7) years.
2. *Children* over the age of seven (7) years, but under the age of fourteen (14) years, in the absence of proof that at the time of committing the act or neglect charged against them, they knew its wrongfulness.
3. *Idiots.*
4. *Lunatics, insane persons,* and all persons of *unsound mind,* including persons temporarily or partially deprived of reason, upon proof that at the time of committing the act charged against them they were incapable of knowing its wrongfulness.
    *    *    *    *    *    *
7. Persons who committed the act, or make the omission charged, while under *involuntary subjection* to the power of superiors." (Emphasis added.)

**29.** The pertinent terms of Art. 28, § 5, Okl. Const., are:

"It shall be unlawful for any licensee to sell or furnish any alcoholic beverage to:
A person under twenty-one (21) years of age; or * * *
A person who is intoxicated. * * *"

**30.** 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) (the 4th Amendment's protection from unreasonable searches and seizures).

**31.** *See Davis v. Passman,* 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979) (the 5th Amendment's due process clause and its anti-discriminatory component); *Carlson v. Green,* 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980) (the 8th Amendment's right to be free from cruel and unusual punishment).

**32.** *See Bivens, supra* note 30, and cases cited at *supra* note 31.

**33.** 37 O.S.Supp.1959 §§ 502 et seq.

**34.** 37 O.S.Supp.1959 § 538(G).

**35.** *See* the provisions of § 538(G), *supra* note 18.

*the promise embraced in the constitutional shield.*

The *Cort v. Ash* [36] standards do not afford a basis for implying a private right of action in favor of drunks. The multi-prong *Cort* test—which was established for determining whether a private right of action may be implied in a regulatory statute where there is no explicit text creating it—*requires the plaintiff to be one of the class for whose especial benefit the act was enacted.*

No private cause of action can be implied to favor drunks. They, as a class, were not intended as beneficiaries of the constitution's promise and of the implementing legislation. Rather, that promise clearly was made for the protection of the public; the *intended beneficiaries of our Constitution are the potential victims of drunks— not the drunks themselves.* Neither the state constitution nor its vitalizing legislation either explicitly or implicitly suggests an intent to fashion a private remedy for *sui juris* excessive consumers of liquor. The amendment is plainly intended to create *a public right* that is amply enforceable by criminal statutes.

### SUMMARY

In sum, after *my own* revisit of *Brigance* and its history, I join today in the court's refusal to remove the common law's causal barrier to allow claims by *sui juris* consumers who *voluntarily and knowingly* over-ingest alcohol. Because I remain firmly committed to the notion that third parties who are injured by a tavernkeeper's tortious sale—a sale tainted by the supplier's guilty knowledge (scienter) of the consumer's intoxicated state—*must* receive the law's protection, I would not today reject a future imprimatur for those claims against liquor suppliers which are pressed by consumers (a) whose will was impaired by the seller's duress or false misrepresentation or (b) those incapable of *voluntary ingestion* by incapacity from age or mental deficiency.

LAVENDER, Justice, concurring in part; dissenting in part:

I must dissent from that part of the majority opinion which fails to recognize a common law cause of action against a tavern owner or his employee(s) for serving alcohol to a noticeably intoxicated patron who suffers injury in a one-vehicle accident after leaving a drinking establishment. Although I would recognize such a cause of action and leave the determination to a jury in most instances, I wish to stress my view of the situation would leave undisturbed the traditional common law rule of nonliability for selling or furnishing alcohol to an able bodied person. Only in situations where the patron would be recognized as noticeably or obviously intoxicated by a reasonable person under similar circumstances would I recognize a claim in favor of the tavern patron.

In *Brigance v. Velvet Dove Restaurant, Inc.*, 725 P.2d 300 (Okla.1986), we for the first time held a commercial vendor of alcoholic beverages for on premises consumption must exercise reasonable care not to sell or furnish liquor to persons who, by their noticeable intoxication, may lack the capacity to safely operate a motor vehicle and are thus likely to subject third parties to an unreasonable risk of harm. In *Brigance*, as the majority states, we left open the question of whether the consumer-intoxicated driver would have a cause of action against the vendor of alcohol. *Id.* at 305, f.n.11. The question was also left unresolved in *McClelland v. Post No. 1201, VFW*, 770 P.2d 569 (Okla.1989). The underlying facts involved in *Brigance* and the wrongful conduct of the seller of alcohol convince me continued civil impunity for the seller of alcohol should no longer be recognized in this jurisdiction.

### DUTY

This Court has recognized a "[d]uty of care is not a concept that arises only by statute". *Union Bank of Tucson v. Grif-*

---

**36.** 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975). In *Holbert v. Echeverria*, Okl., 744 P.2d 960, 963 (1987), this court adopted the first three prongs of the *Cort* test for determining whether a private right of action may be implied in a regulatory statute.

*fin,* 771 P.2d 219, 222 (Okla.1989). A duty may also arise by the force of the common law. As we noted in *Brigance* the common law is not static. *Id.* at 303. It is a dynamic and developing law where rules arise from the application of reason to changing conditions of society. *Id.* We also recognized in *Brigance* that, "[t]he development of the law of torts is peculiarly a function of the judiciary." *Id.* In matters at the heart of the common law where there is no affirmative legislative pronouncement in the area (which there is not here) it is our perogative and, in fact, our responsibility to reevaluate common law rules which are no longer valid in today's world.

In *Brigance* we partially relied on the Restatement (Second) of Torts § 390 (1965) in ruling there was a duty on a tavern owner for on premises consumption to exercise ordinary care under the circumstances in regard to furnishing liquor to intoxicated patrons. *Id.* at 304. Section 390 provides as follows:

> One who supplies ... a chattel for the use of another whom the supplier knows or has reason to know to be likely because of his youth, inexperience, *or otherwise,* to use it in a manner involving unreasonable risk of physical harm *to himself* and others ... is subject to liability for physical harm resulting to them. (emphasis added)

Illustration No. 7 to § 390 goes on to provide:

> A, who makes a business of letting out boats for hire, rents his boat to B and C, who are obviously so intoxicated as to make it likely that they will mismanage the boat so as to capsize it or collide with other boats. B and C by their drunken mismanagement collide with the boat of D, upsetting both boats. B, C, and D are drowned. A is subject to liability to the estates of B, C, and D under the death statute, although the estates of B and C may also be liable for the death of D.

The situation set out in the Illustration is analogous to one where a tavern owner or his employee(s) continue to serve drinks to a noticeably intoxicated patron. Injury to the intoxicated patron in our automotive society is no less foreseeable than injury to a third party, injury to whom *Brigance* recognized was forseeable. *Id.* at 304. Other courts faced with the same question have recognized no distinction on the foreseeability issue between third parties and the intoxicated patron. *Lyons v. Nasby,* 770 P.2d 1250, 1254 (Colo.1989); *Bissett v. DMI, Inc.,* 220 Mont. 153, 717 P.2d 545, 547–548 (1986); *See also Jevning v. Skyline Bar,* 223 Mont. 422, 726 P.2d 326 (1986) and *Brannigan v. Raybuck,* 136 Ariz. 513, 667 P.2d 213, 216 (1983). I likewise see no rational distinction for a rule that would impose a duty running in favor of third parties while at the same time failing to recognize a duty in regard to the patron himself.

In ruling that no duty runs in favor of the intoxicated patron and in stressing our decision in *Brigance* afforded protection *only* for the "innocent bystander", the majority appears to ignore the factual underpinnings of *Brigance. Brigance* involved injury to a passenger riding with the intoxicated driver. Although the injured party in *Brigance* was a minor it was alleged there he had been drinking alcohol with the intoxicated driver, another minor, at the tavern sued. One could, thus, hardly argue, as the majority appears to, that the victim in *Brigance* was an "innocent bystander". Thus, the ruling in the instant case, coupled with our ruling in *Brigance,* ultimately leads to what I consider the following most illogical outcome.

Two persons go to a tavern to drink. Both become noticeably intoxicated and the tavern owner or his employee(s) continue to serve them alcohol. The two now intoxicated individuals travel home together in the same vehicle which is involved in a one-vehicle accident resulting in injury to both. Under *Brigance* the passenger has a cause of action against the tavern owner or its employee(s), but under the majority opinion's teaching the driver does not. I simply do not see the logic in treating the two individuals differently. Aside from this inconsistency, it is my view the majority focuses much too much attention on the wrongful conduct of the inebriate and

much too little on the wrongful conduct of the seller of alcohol.

Many courts, like the majority here, that have failed to recognize a duty on the part of the tavern owner to an inebriate do so on public policy grounds. *See* cases cited in *Lyons, supra,* 770 P.2d at 1255. The reasoning is based on the view that one who consciously engages in the self-indulgent act of voluntary intoxication thereby temporarily casting off ordinary powers of reason should be responsible for their own injuries resulting therefrom, protecting such individuals from their own folly fosters individual irresponsibility and allowing recovery to one who knowingly becomes intoxicated and thereby injures himself is morally indefensible. Although I agree that one who enters a tavern and drinks to noticeable intoxication and then drives away in an automobile is irresponsible, it is my view the person who continues to serve drinks to such an individual is also irresponsible and I fail to see why the common law continues to immunize such irresponsible conduct. The Supreme Court of Colorado in *Lyons, supra,* at 1255 expressed my thoughts when it said:

> We agree that voluntary intoxication is a self-indulgent act. We also note that the person who voluntarily consumes alcohol to the point of intoxication is at the very least partially responsible for his injuries. However, the fact that the patron has acted in an unacceptable manner should in no way lessen the equally unacceptable conduct of a tavern owner. One who stands behind a bar and serves drink after drink to a visibly intoxicated customer engages in behavior which is as opprobrious as that of the customer. We think it "morally indefensible" to condone the conduct of a tavern owner who, so long as the patron is able to pay, continues to serve the intoxicated patron a steady stream of alcohol. In our view the conduct of both the patron and the tavern owner is reprehensible and should be discouraged. Insulating tavern owners, as a matter of law, from liability does not send the message that they, as well as their patrons, must be accountable for their actions.

As noted, the majority appears to focus exclusively on the wrongful conduct of the customer and seems to ignore the wrongful conduct of the tavern owner or its employee(s). In doing so it rules as a matter of law and on its view of public policy that a tavern customer is solely responsible for injuries suffered in a one-vehicle accident. Although I agree voluntary intoxication is a self-indulgent act and one who engages in such conduct is partly to blame for his injuries, the framework I would use to decide this case and to analyze negligence claims generally would not be so casually and cavalierly thrown aside each time I disapprove of a plaintiff's conduct. *Lyons, supra* at 1255.

To me, the proper method to register disapproval of either the patron or tavern owner's conduct normally lies in our comparative negligence statute which allows the trier of fact (usually a jury) to assess the degrees of fault of the parties in determining liability. 23 O.S.1981, § 13. Our fundamental law, as embodied in the Oklahoma Constitution, provides contributory negligence is exclusively a question for the jury. OKLA. CONST. art. 23, § 6. A statute exists to the same effect. 23 O.S.1981, § 12. The majority avoids these provisions and, instead, implicitly indicates it is better positioned than the people of this State to determine the respective fault of the parties. I cannot countenance such a view. When the evidence in any particular case warrants a conclusion that both the customer and the seller of alcohol have engaged in wrongful conduct it is not for us, an appellate court, to take the decision-making power away from the people. In the normal case it is the jury that is in the best position to make the judgment as to relative fault when evidence is presented that both parties to the transaction have acted negligently. Although the rule espoused by the majority may have made sense when any negligence on the part of a plaintiff precluded all recovery, it makes no sense today, over a decade after our Legislature adopted comparative negligence in this jurisdiction.

My position would not place tavern owners under a greater duty than they are already under by virtue of the Oklahoma Constitution and the statutes of this State. It would merely provide an additional monetary incentive for tavern keepers to conform their conduct to already existing law. OKLA. CONST. art. 28, § 5 specifically provides it is a felony to sell alcoholic beverages to an intoxicated person. 37 O.S. Supp.1988, § 538(G), in carrying out the constitutional provision, provides, "[a]ny person who shall knowingly sell ... alcoholic beverage to an ... intoxicated person shall be guilty of a felony, and shall be fined not less than Five Hundred Dollars ($500.00) nor more than One Thousand Dollars ($1,000.00), or imprisoned in the State Penitentiary for not more than one (1) year, or both such fine and imprisonment". Thus, a duty already exists to not sell alcohol to intoxicated persons. A criminal case construing a predecessor provision to § 538(G) makes clear only when the customer would be recognized by his conduct and demeanor as noticeably intoxicated to a person of ordinary experience will criminal liability attach, the basic standard I would apply in the civil arena. *Kyle v. State,* 366 P.2d 961, 965–966 (Okla.Crim.App.1961). Just as a tavern owner or employee may not escape criminal liability by shutting their eyes and ears when faced with an obviously intoxicated patron this Court should not shut its eyes and ears by continuing a rule of law which ignores the wrongful conduct of a seller of alcohol merely because it abhors the conduct of the customer who drinks it.

I wish to stress the test I would apply is not whether the patron is "legally intoxicated", i.e. considered to be under the influence of alcohol by virtue of a breath or blood test performed pursuant to Oklahoma statutes which show an alcohol content of ten-hundredths (0.10) or more. 47 O.S.Supp.1990, § 11–902. In my view, such a rule may be an impossible standard to place on tavern owners. However, tavern owners should easily be able to determine in the exercise of reasonable judgment whether a patron is *noticeably* intoxicated, a judgment I believe is capable of being made by an ordinary person under similar circumstances.

Although I dissent from that part of the majority opinion which fails to recognize the potentiality of a cause of action under the common law I concur in Part III(A), which holds a violation of 37 O.S.Supp. 1985, § 537(A)(2) does not amount to negligence *per se.*

I am authorized to state Justice KAUGER joins in the views expressed herein.

ALMA WILSON, Justice, dissenting on rehearing:

The Constitution of the State of Oklahoma expressly forbids a holder of a license issued by the Alcohol Beverage Law Enforcement Commission (ABLE Commission) to sell or furnish an alcoholic beverage to an intoxicated person. Okla. Const., art. 28, § 5. Without reference to our constitution, today, the Court holds that in the absence of harm to a third party, the act of serving an alcoholic beverage to an intoxicated adult does not constitute a breach of duty which is actionable in common law negligence. The expressed underpinning of the majority holding is "societal considerations aimed at deterring drunken driving...." Focus on deterence of harm to third persons caused by drunken driving ignores the constitutionally imposed duty of care owed by a liquor licensee to an intoxicated person. That constitutional duty is to refrain from selling or furnishing an alcoholic beverage to any intoxicated person. A violation of the constitutionally imposed duty of care obtains legal significance. Accordingly, I respectfully dissent.

The selling of alcoholic beverages to an intoxicated person by a liquor licensee is unlawful conduct and a violation of the Oklahoma Constitution, Article 28, § 5, which states, in part:

§ 5. **Prohibition of sales to certain persons—Limitation on advertising—Penalties**

It shall be unlawful for any licensee to sell or furnish any alcoholic beverage to:

A person under twenty-one (21) years of age; or

A person who has been adjudged insane or mentally deficient; or

A person who is intoxicated.

A plain reading of this constitutional provision is that persons under the age of twenty-one years, persons adjudged mentally incompetent and persons intoxicated are to be protected by the liquor licensee. That is, the liquor licensee had a duty not to sell or furnish alcoholic beverages to persons in those three specified groups of persons.

A violation of this constitutional provision has legal significance at least equal to that of a violation of a statute or an ordinance. Violation of a statute and causal connection to injury are sufficient to present a prima facie case of negligence. For instance, violation of a statute in the operation of a motor vehicle constitutes negligence *per se*, proof of which makes out a prima facie case of negligence liability and shifts the burden to the defendant to present evidence to make it appear the violation of the statute did not cause the injury. *Garner v. Myers*, 318 P.2d 410, 413 (Okla.1957). Driving an automobile on the wrong side of the road in violation of the rules of the road is prima facie evidence of negligence. *Shoopman v. Travelers Insurance Company*, 518 P.2d 1108, 1110 (Okla.1974).

It is undisputed in Oklahoma that violation of a statute or an ordinance is deemed negligence *per se* if the other elements of actionable negligence are present. *Hampton v. Hammons*, 743 P.2d 1053, 1056 (Okla.1987). Those elements are: 1) the injury is caused by the violation; 2) the injury is the type intended to be prevented by the statute or ordinance; and, 3) the injured party is within the class of persons protected by the statute or ordinance. *Hampton v. Hammons*, supra, at 1053, and *Boyles v. Oklahoma Natural Gas Co.*, 619 P.2d 613, 618 (Okla.1980). In denying the intoxicated person a tort claim against a liquor licensee, the majority opinion erroneously finds that the intoxicated person is not within the class of persons protected by 37 O.S.Supp.1986, § 537,[1] and therefore a violation of § 537 is not negligence *per se*.

The purpose or intent of Article 28, § 5 is not limited to the protection of sober third persons nor is it limited to the prevention of injury to third persons caused by drunken driving. A reasonable intent to be gleaned from Article 28, § 5 is the protection of minor persons and adjudged mentally deficient persons and intoxicated persons.[2] An intoxicated person should have a judicial forum to prove the liquor licensee violated Article 28, § 5 and that violation caused injury to the intoxicated person. In the absence of any constitutional or statutory provision excluding an intoxicated person from a civil remedy for injury causally connected to a breach of the liquor licensee's duty of care imposed by Article 28, § 5, the common law principles of negligence serve to protect those groups of persons specifically identified in Article 28, § 5. The legal authorities and reasoning in Justice Lavender's dissent in part requires this Court to recognize the duty of care of a liquor licensee expressed in Article 28, § 5 within the realm of our common law of torts. Accordingly, I respectfully dissent

---

1. In 1984, the voters amended our constitution for the purpose of allowing open saloons at the option of the county voters. State Question No. 563, Initiative Petition No. 319, adopted Sept. 18, 1984, repealed Okla. Const., art. 27, and adopted Okla. Const., art. 28. Much of the language in repealed Article 27 is reiterated in Article 28. The legislature amended the intoxicating liquor laws to conform with the new Article 28. 1985 Okla.Sess.Laws, ch. 6. The legislature reenacted the language in 37 O.S. 1981, § 537(A)(2) which states, "No person shall ... sell, deliver or knowingly furnish alcoholic beverages to an intoxicated person...." It is this statutory language which the majority opinion finds not to protect intoxicated persons.

2. The concurring opinion would recognize actionable claims by persons who imbibe because of duress, coercion, or other wilful or grossly negligent misconduct and by persons under legal disability, those who are under twenty-one years of age or who have been adjudged mentally deficient. These exceptions to the majority opinion would present fact questions to be decided by the trial court in pretrial motions or by the jury. Article 28, § 5 protects the intoxicated, underage and mentally deficient persons the same. Sale of alcoholic beverages to any such persons is unlawful. Exclusion of the intoxicated person from those entitled to maintain an action against a liquor licensee is inconsistent with Article 28, § 5.

and join in Justice Lavender's dissent in part.

I am authorized to state that Justice KAUGER joins in the views expressed herein.